UNITED STATES of America,
Plaintiff-Appellee,

v.

Ira Eugene BORCHARDT,
Defendant-Appellant.

No. 82–2288
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1983.

Stephen M. Orr, Austin, Tex., for defendant-appellant.

John M. Potter, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GEE, RANDALL and TATE, Circuit Judges.

GEE, Circuit Judge:

Borchardt was charged, by four counts of a six-count indictment, with conspiracy to import and to possess with intent to distrib-

ute marijuana from November 1, 1980, to February 26, 1981 (counts 1 and 2), and with importing and possessing 481 pounds of marijuana on February 22, 1981 (counts 5 and 6). A jury found Borchardt guilty of these four counts. The district court sentenced him to consecutive five-year terms on counts 1 and 2, to five years on count 5 to run concurrently to the sentence on count 1, and to five years on count 6 to run consecutively to that on count 1, for a total of ten years, and to special parole terms of five years each on counts 5 and 6 to run concurrently. Borchardt appeals, with leave of court, *in forma pauperis.*

## FACTS

"The facts in this case are intricate and complicated. The salient facts are worthy of disclosure; others, not germane ... [may] rest on the cold pages of the transcript and the parties' briefs." *United States v. Kupper,* 693 F.2d 1129, 1130 (5th Cir.1982).

Events began in August 1980 with a telephone conversation between Borchardt in Mexico City and one Howard Awalt in Irving, Texas, that led to a meeting between them "to renew old acquaintances." A second meeting among Borchardt, Awalt, Terry Tate, and another was held to discuss financial arrangements for importing approximately 1,100 pounds of marijuana. Tate was to give Borchardt $100,000 to purchase marijuana, which was to be flown into the United States to a place near Austin, Texas. Awalt gave Borchardt $6–7,000 to pay for a landing strip in Mexico and $300,000 in diamonds as an investment in the marijuana operation.

Financial difficulties concerning the importation arose, requiring Awalt and Borchardt to go to Mexico with $20,000 to pay to "the Commandante." One Collins, who was to handle distribution of the marijuana once it entered the United States, later brought more money to Borchardt in Mexico. Arrangements for importing the marijuana were made.

In December 1980 a 400-pound load was delivered to the Dallas area, but Borchardt encountered difficulties in finding pilots to fly the marijuana to Austin, delaying further shipments temporarily. While Borchardt was trying to make arrangements for further shipments, Awalt was arrested in January 1981. Eventually, Borchardt loaded a plane on February 21, 1981, at the Minatitlan International Airport. The plane encountered bad weather and ran out of gas when the transfer pump failed, crash-landing in a field near Raymondville, Texas, on February 22. On that same day, the police found the unoccupied plane loaded with wrapped packages later found to contain 481 pounds of marijuana. Further investigation led to the indictment in this case. Borchardt maintained at trial that his participation in these activities was part of his work for the Mexican Commandante at Oaxaca.

## THE JUDGE'S COMMENTS

Borchardt contends that the trial judge improperly prejudiced the defense by asking questions that facilitated the introduction of the Government's evidence, as well as questions that adversely reflected on the credibility of the defense's witnesses.

The law governing a trial judge's participation in the trial is well established in this Circuit:

It is axiomatic ... that "[t]he trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution." ... On the other hand, a federal judge is not a mere moderator of proceedings.... He is a common law judge having that authority historically exercised by judges in the common law process. He may comment on the evidence, ... may question witnesses and elicit facts not yet adduced or clarify those previously presented, ... and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion.... Only when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial.

*Moore v. United States,* 598 F.2d 439, 442 (5th Cir.1979); *accord, United States v. Jimenez-Dias,* 659 F.2d 562, 566 (5th Cir. 1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1754, 72 L.Ed.2d 164 (1982); *United States v. Bartlett,* 633 F.2d 1184, 1188 (5th Cir. 1981), *cert. denied,* 454 U.S. 820, 102 S.Ct. 101, 70 L.Ed.2d 91 (1981).

The transcript reflects that the trial judge actively participated in the questioning of witnesses, asking eighty questions of the prosecution's witnesses and 115 questions of those for the defense. "While such statistical comparisons are not without significance, '[t]he tenor of the court's questions rather than their bare number is the more important factor.'" *Moore,* 598 F.2d at 442 (citing *United States v. Hoker,* 483 F.2d 359, 366 (5th Cir.1973)).

■ A review of the instances of questioning cited by Borchardt causes us to conclude that, in their several contexts, the trial judge's questions sought only to clarify a witness's testimony either for the court, for the jury, or for counsel. *See* Fed.R. Evid. 614(b); *Kyle v. United States,* 402 F.2d 443, 444 (5th Cir.1968). On other occasions the trial judge interrupted counsel's questioning and reminded him of what the witness had already said. This questioning by the trial judge was pursuant to his discretion to interrupt and cut off counsel's questioning in order to expedite the proceedings and did not make the judge an advocate for the prosecution. *See United States v. Hill,* 496 F.2d 201, 202 (5th Cir. 1974).

Borchardt also complains that the trial judge facilitated the admission of the Government's evidence through his questioning. Again, this questioning merely maintained the pace of the trial and did not reflect adversely on the defendant. On other occasions, the trial judge raised questions concerning the attempts of the defense counsel to place certain evidence or testimony before the jury, resulting in a series of exchanges between the judge and counsel. Although these exchanges may perhaps have raised questions in the jurors' minds about the competency of the defendant's trial counsel, they appear as sincere attempts to see that proper procedures were followed and did not call into question the credibility of the evidence or testimony. *See Moore,* 598 F.2d at 442–43.

The court also cross-examined the defendant's wife concerning the period of her separation from the defendant, questioned the defendant about his reasons for returning to Texas after the plane crashed, and inquired about why he expected the plane to land in Mexico when it ran out of fuel. This questioning was obviously "directed at eliciting information ... not provided during direct and cross-examination." *Id.* "[T]he court's questioning here was unbiased, patient and temperate, never argumentative or accusatory." *Moore,* 598 F.2d at 443. During the questioning of the defendant, the trial judge explicitly stated that "I haven't been implying anything by my questions other than I want to hear your answers."

Furthermore, the trial judge's charge to the jury emphasized that it was the sole judge of the facts, specifically cautioning the jurors against attributing significance to any of the comments he had made. He also explained his purpose in asking questions of the witnesses and admonished the jurors to lay no special weight on the fact that the judge had asked the questions. Borchardt has not demonstrated that the trial judge's questioning of witnesses and other comments denied him a fair trial or constituted reversible error.

## GUILTY PLEA OF CO–CONSPIRATORS

Borchardt also asserts that the Government's eliciting of testimony about their guilty pleas from two coconspirators impermissibly suggested that Borchardt was also guilty, that the court's questioning exacerbated this error, and that a limiting instruction was not given, explaining that defense counsel did not object to the questioning or ask for an instruction because of a tactical decision not to draw further attention to the guilty pleas.

"A defendant is entitled to have the questions of his guilt determined upon the evidence against him, not on whether a Government witness or a codefendant has pled guilty to the same charge." *United States v. Fleetwood,* 528 F.2d 528, 532 (5th Cir.1976), *quoting Babb v. United States,* 218 F.2d 538, 542 (5th Cir.1955).

■ The general rule in this Circuit is that a witness-accomplice's guilty plea may be brought out at trial, provided that evidence serves a legitimate purpose and the jury is properly instructed about the limited use they may make of it. *See, e.g., United States v. Halbert,* 640 F.2d 1000, 1004–05 (9th Cir.1981); *United States v. Veltre,* 591 F.2d 347, 349 (5th Cir.1979); *cf. United States v. King,* 505 F.2d 602, 607 (5th Cir. 1974) (same rule under "plain error" standard of review). Counsel presenting witnesses of blemished reputation routinely bring out "such adverse facts as they know will be developed on cross-examination" in order to avoid even the appearance of an "intent to conceal." *United States v. Aronson,* 319 F.2d 48, 51 (2d Cir.1963), *cert. denied,* 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164 (1963); *accord, Halbert,* 640 F.2d at 1004–05; *cf. United States v. Fleetwood,* 528 F.2d at 532 (conviction reversed because Government deliberately introduced guilty pleas of others to create inference of guilt against accused). The only further requirement is that the jury be given a "clear and strong cautionary instruction," *United States v. Baete,* 414 F.2d 782, 784 (5th Cir.1969), that it may use the accomplice's guilty plea only to assess his credibility as a witness and not to create an inference of guilt against the accused. *Cf. United States v. Harrell,* 436 F.2d 606, 614 (5th Cir.1970), *cert. denied,* 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972) (no cautionary instruction given and judgment of conviction reversed).

Factors to be considered in evaluating the impact of a witness' guilty plea are the presence or absence of a limiting instruction, whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as a substantive evidence of guilt, and whether the introduction of the plea was invited by defense counsel. *United States v. Black,* 685 F.2d 132, 135 (5th Cir.1982).

■ The Government correctly notes that the defense counsel indicated at the outset of the trial his intent to use felony convictions for impeachment purposes. Therefore, it argues that its questioning of Awalt and Landas, a pilot, about their guilty pleas relating to the same offense for which Borchardt was on trial was done in anticipation of the defense's plan to use such pleas for impeachment purposes. This reason meets the requirement that the Government have a legitimate purpose in asking about the guilty pleas. Furthermore, although defense counsel contends that he did not object because he did not want to draw undue attention to this testimony, he vigorously and extensively pursued the guilty plea aspect in his cross-examination of Awalt. Clearly, any emphasis placed on the guilty pleas cannot be attributed to the Government alone.

Finally, the court did instruct the jury not to consider the guilty pleas of any witness as evidence of Borchardt's guilt:

> There was testimony that other people that testified in this case have also been convicted of other crimes, of Mr. Awalt and, of course, the pilots who testified admitted that they pled guilty in this particular case.
>
> Now, those convictions of the men that were involved in this case, of some offense relating to these facts, again is not any evidence with respect to this defendant in this case, nor any element of any violation with which this defendant is charged. Again, that evidence was admitted before you so that you could weigh those witnesses' credibility and believability and again give those witnesses' testimony whatever dignity you think it deserved under those circumstances.

The law requires no more.

## DOUBLE JEOPARDY

Borchardt's final contention is that his right not to be twice placed in jeopardy was

violated by his consecutive sentences on the two conspiracy counts and the two substantive counts. Regarding the conspiracy counts, Borchardt argues that only one conspiracy both to import and to distribute marijuana existed; therefore, he could be punished only once. Regarding the substantive counts, Borchardt argues that because no fact other than the importation of the marijuana was proven, he could not also be convicted of possession with the intent to distribute the marijuana.

We have said that the breadth of a conspiracy is defined by the unlawful agreement. *United States v. Marable,* 578 F.2d 151, 153 (5th Cir.1978). "[O]ne agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one." *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942). This examination is especially necessary when the drug conspiracy statutes, 21 U.S.C. §§ 846 and 963, are involved because proof of an overt act is not necessary to a conviction. *Marable,* 578 F.2d at 153–54. Determining whether the evidence describes a single agreement or two conspiracies "focuses upon these elements: (1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government or any other description of the offense charged which indicates the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place." *Id.* at 154.

In Borchardt's case counts 1 and 2 of the indictment and the evidence adduced to support them are identical in all material respects except that each count alleges a different statutory offense. Count 1 alleges a violation of 21 U.S.C. §§ 952(a) and 963 (conspiracy to import marijuana). Count 2 alleges a violation of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to possess, with intent to distribute, marijuana). This Court has held that consecutive sentences for conspiracy to import marijuana and for conspiracy

to distribute marijuana do not violate the double jeopardy clause, although each statutory violation was part of a single agreement. *United States v. Rodriguez,* 612 F.2d 906, 908 (5th Cir.1980) (en banc), *aff'd* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). The Court based its reasoning on a distinction between a violation of a general conspiracy statute as occurred in *Braverman* and a violation of two separate, specific conspiracy statutes. *Id.* at 913–15. It found that Congress intended the consecutive punishment of conspiracy to import and conspiracy to distribute. *Id.* at 917. It also noted that each statute involved the proof of a different fact than the other. *Id.* at 919–20. Borchardt's case falls squarely within our decision in *Rodriguez.* The legislative intent to authorize such cumulative punishment being apparent, Borchardt's rights against double jeopardy were not violated by imposing consecutive sentences under the counts for conspiracy to import and for conspiracy to distribute marijuana. *Missouri v. Hunter,* —— U.S. ——, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

Borchardt's argument that his double jeopardy rights were violated because the same evidence used to convict him on the substantive count of importing marijuana was also used to convict him on the substantive count of possessing marijuana with the intent to distribute it is also misplaced. This Court has held that the focus is not on the evidence used for both convictions but on the elements of the offenses charged. *United States v. Cowart,* 595 F.2d 1023, 1029 (5th Cir.1979). Because the elements of 21 U.S.C. § 952(a) (importing marijuana) are different from the elements of 21 U.S.C. § 841(a)(1) (possessing marijuana with the intent to distribute it), Borchardt's right to be free from double jeopardy was not violated by his consecutive sentences on these substantive counts.

Borchardt's argument could, however, be interpreted as contending that the evidence for the conviction for possessing marijuana with the intent to distribute it was insufficient because the evidence showed only that 481 pounds of marijuana

was imported. The test for sufficiency of the evidence in this Circuit is whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc). Here, the large quantity of marijuana was sufficient to permit the jury to infer intent to distribute. *See United States v. Mazyak,* 650 F.2d 788, 790–91 (5th Cir.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982); *United States v. Grayson,* 625 F.2d 66, 67 (5th Cir.1980). Also, Borchardt's participation in the venture in loading the marijuana and the calls to him and his activities after the crash would permit the jury to infer that he had constructive possession of the marijuana. *See United States v. Ocanas,* 628 F.2d 353, 361 (5th Cir.1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 840 (1981).

Therefore, the district court did not err in sentencing Borchardt to consecutive sentences on the two substantive counts.

AFFIRMED.