No. 83–1643.   BORCHARDT *v.* UNITED STATES.   C. A. 5th Cir. Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

The petitioner Ira Borchardt challenges a judgment of the Fifth Circuit affirming his felony conviction for violations of the currency laws.   A federal jury sitting in the Northern District of Texas found that Borchardt smuggled large sums of currency out of the country in furtherance of an illegal scheme to purchase and import marihuana from Mexico.   Borchardt contends that,

because he already had been convicted of conspiracy-to-import charges by a federal jury sitting in the Southern District of Texas, the Northern District prosecution and conviction for the currency offenses violated his right under the Fifth Amendment's Double Jeopardy Clause not to be tried successively for the same criminal acts. The Government responds that (1) there was no double jeopardy violation; and (2) in any event, Borchardt's Sixth Amendment venue rights precluded the joinder of all charges at a single trial.

I believe this case presents an important question whether the second prosecution and conviction impermissibly rest on criminal acts that formed the basis of Borchardt's first conviction. I also believe the case presents an important question whether the Government improperly has exploited Borchardt's venue rights to defeat his right otherwise to be secure from repetitious prosecutions for the same criminal acts. The venue issue, in particular, is a substantial federal question that is likely to recur with frequency. I therefore respectfully dissent from the Court's denial of certiorari.

I

Borchardt began to conspire with several other individuals in August 1980 to import marihuana from Mexico into the Dallas-Fort Worth area, which is in the Northern District of Texas. Twice that autumn, Borchardt and his co-conspirators surreptitiously flew a total of $126,000 from the Dallas-Fort Worth Airport to Mexico City for the purpose of purchasing marihuana. Borchardt spent much of the next several months in Mexico making preparations to transport the purchases back into the Dallas-Fort Worth area. Between December 1980 and February 1981, he arranged for three airplane flights that carried a total of approximately 2,600 pounds of marihuana. The scheme began to unravel when, during the third flight on February 22, 1981, the airplane encountered bad weather, ran out of fuel, and crash-landed outside the town of Raymondville, which is in the Southern District of Texas. Borchardt, who had remained behind in Mexico, returned to this country and was arrested shortly thereafter.

The United States Attorney for the Southern District of Texas obtained an indictment in December 1981. Borchardt was charged with importing marihuana into the Southern District on February 22, 1981, and with constructively possessing marihuana on that date with the intent to distribute it. He also was charged with conspiring, "from on or about November 1, 1980, to on or

about February 26, 1981," to import, possess, and distribute marihuana. 1 Record 27. The conspiracy charges against Borchardt rested on his role in smuggling the currency into Mexico on the two occasions discussed above, his supervision of the shipments from Mexico, and his participation in various planning meetings and telephone conferences. The jury convicted Borchardt on all counts, and the District Court sentenced him to 10 years in prison. The Court of Appeals for the Fifth Circuit affirmed the conviction. *United States* v. *Borchardt*, 698 F. 2d 697 (1983).

In July 1982, shortly after Borchardt's conviction in the Southern District, the United States Attorney for the Northern District of Texas obtained a second indictment relating to the importation conspiracy. Borchardt was charged with two counts of violating the currency laws; these counts represented the two occasions he had smuggled currency into Mexico.[1] Specifically, the indictment charged that Borchardt on these two occasions had violated 31 U. S. C. § 1059 (1976 ed.), which proscribed the willful failure to file currency reports when taking money out of the country "where the violation is . . . *committed in furtherance of the commission of any other violation of Federal law* . . ." (emphasis added).[2] The Northern District indictment charged that

---

[1] Borchardt also was charged with two cocaine offenses, and the jury ultimately convicted him of one count of possessing cocaine. He received a 2-year sentence for this offense, to be served consecutively to the currency sentences discussed *infra*, at 940. The cocaine conviction is not infirm on double jeopardy grounds. Although Borchardt argues that the cocaine and marihuana offenses were but segments of an overarching continuing conspiracy to import drugs, and therefore should have been tried together, the Government's proof on the cocaine charge rested on entirely different overt acts from the marihuana and currency charges.

[2] Later in 1982, this provision was amended and recodified at 31 U. S. C. § 5322(b), which now prohibits the willful failure to file the required reports "while violating another law of the United States or as part of a pattern of illegal activity involving transactions of more than $100,000 in a 12-month period . . . ." Borchardt's duty to file a currency report arose from 31 U. S. C. § 1101(a)(1)(A) (1976 ed.), which provided that anyone who knowingly "transports or causes to be transported monetary instruments . . . from any place within the United States to or through any place outside the United States, . . . in an amount exceeding $5,000 on any one occasion" must file a report thereof. This provision has been recodified without substantive change at 31 U. S. C. § 5316. See also 31 CFR § 103.25(b) (1984) (providing for the filing of such reports "with the Customs officer in charge at any Customs port of . . . departure").

Borchardt had violated the currency-reporting requirements "in furtherance of . . . the illegal importation of marijuana." 1 Record 10–11.

Borchardt moved to dismiss the second indictment. *Id.*, at 24; see also *id.*, at 294. He argued that his currency smuggling already had been used in the Southern District trial to obtain his conviction for conspiracy to import and distribute marihuana, that a second trial would require the same evidence concerning the same acts as had been elicited at the first, and that to obtain a conviction under § 1059 the Government would have to retry the underlying felonies that he had been convicted of only months before. The District court denied Borchardt's motion. 3 Record 26; 11 Record 3–4. The jury convicted Borchardt of both counts, and the court sentenced him to consecutive sentences of four years for each violation, to be served consecutively to the sentence he was serving for the conviction in the Southern District of Texas. The Fifth Circuit affirmed in an unpublished opinion, No. 82–1719 (Dec. 20, 1983), judgment order reported at 723 F. 2d 905, and denied panel rehearing and rehearing en banc.

## II

This case does not implicate the acknowledged power of the Federal Government to seek, *at a single criminal trial*, separate and consecutive punishments for various aspects of a single criminal act. See, *e. g.*, *Albernaz* v. *United States*, 450 U. S. 333 (1981). Rather, it presents the "entirely different constitutional issue" whether such multiple punishments may be obtained through "multiple *prosecutions* of the same offenses." *Abbate* v. *United States*, 359 U. S. 187, 198 (1959) (separate opinion of BRENNAN, J.) (emphasis added). I adhere to my view that the Double Jeopardy Clause of the Fifth Amendment requires that, except in extremely limited circumstances not present here, "all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction" be prosecuted in one proceeding. *Ashe* v. *Swenson*, 397 U. S. 436, 453–454 (1970) (BRENNAN, J., concurring). See also *Thompson* v. *Oklahoma*, 429 U. S. 1053 (1977) (BRENNAN, J., dissenting), and cases collected therein.

In the instant case, the Federal Government in the Southern District marshaled an array of evidence to demonstrate that

Borchardt had twice smuggled currency out of the country, and it used these episodes along with evidence of other conspiratorial acts to obtain Borchardt's conviction for conspiring to violate, *inter alia,* 21 U. S. C. § 952(a) (importation of controlled substances). Thereafter, in the Northern District trial, the Government again marshaled its array of evidence to demonstrate again that Borchardt had participated in the two smuggling episodes and that he had done so for the purpose of violating 21 U. S. C. § 952(a). Thus the Government twice prosecuted Borchardt for the identical criminal acts, which in my view was in palpable violation of the Double Jeopardy Clause.[3]

---

[3] A majority of the Court continues to apply the "same evidence" test in determining whether successive prosecutions are constitutional, tempered only by application of the collateral-estoppel doctrine. See, *e. g., Ashe* v. *Swenson,* 397 U. S. 436 (1970). Under this approach, the inquiry "is whether each [statutory] provision requires proof of a fact which the other does not." *Blockburger* v. *United States,* 284 U. S. 299, 304 (1932). The constitutionality of Borchardt's currency conviction is highly suspect even under this line of analysis. Borchardt was convicted in the Southern District of both importing and conspiring to import marihuana in violation of, *inter alia,* 21 U. S. C. § 952(a). He thereafter was convicted in the Northern District of violating 31 U. S. C. § 1059 (1976 ed.) on the basis of proof that he (1) willfully failed to file the required currency reports, in furtherance of (2) importing marihuana in violation of 21 U. S. C. § 952(a). The second conviction rested on an element not necessary to the first conviction (willful failure to file reports), but the first conviction did not rest on any elements that the Government did not also have to prove the second time around. "[A] person [who] has been tried and convicted for a crime which has various incidents included in it, . . . cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offence." *In re Nielsen,* 131 U. S. 176, 188 (1889). The reverse is of course also true: a person who has been tried for an offense consisting of certain elements cannot thereafter be tried for an offense consisting of the same elements plus others. See, *e. g., Illinois* v. *Vitale,* 447 U. S. 410, 421 (1980); *Brown* v. *Ohio,* 432 U. S. 161 (1977).

The Government contends, however, that the "same evidence" test is not met here because the underlying felony required for conviction under 31 U. S. C. § 1059 (1976 ed.) could have been any one of numerous felonies other than the importation of marihuana. "The various elements of the marijuana charges . . . are completely unrelated to the currency reporting offense, which could be established if the related crime were arson, bribery, extortion, fraud, or any number of other crimes." Brief in Opposition 5. We rejected just such a facile construction of felony-murder statutes in *Harris* v. *Oklahoma,* 433 U. S. 682 (1977); see also *Illinois* v. *Vitale, supra,* at 420–421, and should do so here as well.

## III

The Government appears to concede that the second prosecution would normally violate, at the very least, its *Petite* policy of trying all related offenses in a single trial. Brief in Opposition 4–5; see *Petite* v. *United States*, 361 U. S. 529 (1960).[4] But it insists that such joinder was impossible here because neither the Southern District nor the Northern District had venue to try all the offenses. Specifically, the Government contends that the two substantive offenses of importation and possession with intent to distribute, which grew out of the presence of the marihuana on Southern District soil after the plane crash on February 22, had to be tried in the Southern District. On the other hand, because the currency offenses occurred at Borchardt's port of departure at the Dallas-Fort Worth Airport, see n. 2, *supra*, only the Northern District had venue to try these crimes. The Government concedes that Borchardt could have been tried on the all-embracing conspiracy charges in the Northern District, but because he already "necessarily faced two trials in separate districts," it contends, there was no logical reason why the conspiracy charges had to be tried with the currency charges rather than with the possession charges. Accepting *arguendo* the Government's contention that venue for the possession and currency offenses initially rested in separate districts,[5] this analysis nevertheless fails for two reasons.

---

[4] The Government has long represented to the Court that it adheres to a policy that "several offenses arising out of a single transaction should be alleged and tried together and should not be made the basis of multiple prosecutions, a policy dictated by considerations both of fairness to defendants and of efficient and orderly law enforcement." *Petite* v. *United States*, 361 U. S., at 530.

[5] The Government suggests only that it is "doubtful" whether the importation and possession charges arising out of the plane crash could have been brought in the Northern District. Brief in Opposition 5. The record, however, appears to indicate otherwise. Borchardt did not accompany the plane from Mexico, so he never *actually* possessed marihuana in the Southern District. The Government's case rested instead on *constructive* possession and importation. As the Fifth Circuit summarized, "Borchardt's participation in the venture in loading the marijuana and the calls to him *and his activities after the crash* would permit the jury to infer that he had constructive possession of the marijuana." *United States* v. *Borchardt*, 698 F. 2d 697, 703 (1983) (emphasis added). The record shows that these postcrash activities occurred in the Northern District of Texas. See 1 Record 6. On the Government's

## A

First, that Borchardt already faced trial in the Southern District on the substantive possession charges could not serve to justify separate trials on the conspiracy and currency charges. The Double Jeopardy Clause does not of course shield a defendant against separate trials for separate criminal acts, but only against separate trials growing out of the same criminal acts.   Prosecution for the substantive possession charges alone would not have barred a subsequent prosecution on the currency charges, because the two crimes were based on different episodes.   The former charges did not rest in any way on Borchardt's earlier smuggling of money out of the country, but rather on Borchardt's constructive possession of the marihuana on the crashed plane, *i. e.*, on evidence that Borchardt had loaded the plane and thereby intended to exercise dominion and control over its cargo.   See n. 5, *supra.*

The conspiracy and currency prosecutions, on the other hand, were largely of a piece because they rested on the same criminal episodes.   The Government's decision to prosecute Borchardt for conspiracy based in part on his acts of smuggling currency necessarily triggered Borchardt's Fifth Amendment right not to be put into jeopardy again, on whatever theory of liability, for his commission of those same acts.   As the Government concedes, the conspiracy and currency charges easily could have been consolidated in the Northern District.   Having made its decision to prosecute Borchardt's acts of smuggling currency to obtain the conspiracy conviction in the Southern District, however, the Government should not now be permitted to bootstrap its way around the Double Jeopardy Clause by pointing to the pendency of other charges in the Southern District that bore no double jeopardy relation to the currency charges.

*Petite* v. *United States, supra,* is squarely on point.   There Petite had been convicted in the Eastern District of Pennsylvania

own evidence, Borchardt took steps to retain dominion and control over the marihuana while he was in the Northern District, so venue would appear to lie in that District for the continuing-offense possession and importation charges.   See, *e. g., United States* v. *Brantley,* 733 F. 2d 1429, 1433–1435 (CA11 1984); *United States* v. *Brunty,* 701 F. 2d 1375, 1382 (CA11), cert. denied, 464 U. S. 848 (1983).   See also 18 U. S. C. § 3237(a) ("[A]ny offense . . . may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed").

for conspiring to make false statements to Government agencies on two occasions, once in Philadelphia and once in Baltimore. Petite subsequently was convicted in the District of Maryland on substantive charges growing out of the same Baltimore agency proceedings. We remanded the case to the Court of Appeals to vacate the judgment after the Government candidly conceded that the second trial violated the Government's own policy against repetitious prosecutions for crimes growing out of a single transaction. *Id.*, at 530–531. Although the Court avoided the constitutional issue, three of us went on to emphasize that "the Double Jeopardy Clause of the Fifth Amendment was an insurmountable barrier to this second prosecution." *Id.*, at 533 (BRENNAN, J., joined by Black and Douglas, JJ.).[6]

## B

Even if the conspiracy charges could only have been brought in the Southern District, however, I believe that the Government fundamentally misperceives the relationship between a defendant's venue rights and his double jeopardy rights. The Sixth Amendment guarantees that an accused "shall enjoy the right to a

---

[6] Of course, if the Government in *Petite* had tried the conspiracy charges in the District of Maryland and had relied on the Philadelphia false statements to obtain the conspiracy conviction, it could not thereafter have prosecuted Petite in the Eastern District of Pennsylvania for making the false Philadelphia statements. Similarly, if the Government in the instant case had prosecuted the conspiracy and currency offenses together in the Northern District of Texas and had relied on the February 22 importation and possession outside of Raymondville to obtain the conspiracy conviction, it could not thereafter have prosecuted Borchardt for the substantive offenses in the Southern District. It might be argued that these results unjustly prevent the Government from fully presenting all evidence of a conspiracy when venue problems preclude it from joining all underlying substantive offenses to the conspiracy prosecution; in such situations, it would be argued, the Government must choose between the equally unattractive options of (a) presenting evidence of all the underlying acts in the conspiracy prosecution, thereby forfeiting the opportunity to secure a subsequent conviction on the underlying substantive offense in a district with proper venue, or (b) withholding evidence of certain acts from the conspiracy prosecution, thereby preserving a subsequent prosecution for the underlying offense but risking a verdict of not guilty on the conspiracy charge for lack of sufficient evidence. The procedure outlined in Part III–B, *infra*, however, provides a full and efficient method for the Government to preserve its opportunity to prosecute for all offenses *and* to present its full array of evidence.

speedy and public trial . . . [in the] district wherein the crime shall have been committed." Because the venue provision was designed primarily to safeguard a defendant's rights,[7] it is one that a defendant may waive in appropriate circumstances. See *Singer* v. *United States*, 380 U. S. 24, 35 (1965); see also Fed. Rule Crim. Proc. 21(b) ("For the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to him or any one or more of the counts thereof to another district").

If the Government simultaneously had secured indictments against Borchardt in the Northern and Southern Districts, he could have waived venue in one of the districts pursuant to Rule 21(b), obtained a joinder of the two prosecutions, and thereby vindicated his right not to be tried twice for the same criminal episodes. Borchardt was not accorded this opportunity, however, because the United States Attorney for the Northern District of Texas waited until several months *after* Borchardt's conviction in the Southern District before bringing the currency charges. The Government has suggested no reason for this delay.[8]

The Double Jeopardy Clause guarantees that all charges arising out of the same criminal act will be brought *both* at the same time *and* in the same proceeding. In some situations the Sixth Amendment's venue safeguards will prevent the Government from bringing all charges in one district, but this should not serve to excuse the Government's obligation under the Fifth Amendment to bring the charges at the same time. The defendant at the very least is entitled to be "informed at one time of all the charges on which he will actually be tried," *Ashe* v. *Swenson*, 397 U. S., at 455, n. 11 (BRENNAN, J., concurring), so that he has a full opportunity to choose between his right to venue in separate districts and his right to a single trial on all related charges. The Government's alternative argument—that a federal prosecutor

---

[7] "The provision for trial in the vicinity of the crime is a safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place." *United States* v. *Cores*, 356 U. S. 405, 407 (1958).

[8] All of the evidence the Government relied upon in the second trial was available at the time of the first indictment, as witnessed by the Government's use of the currency episodes to prove the importation conspiracy. Thus this is not a case where, despite diligent efforts, the Government had not assembled the evidence necessary to prove its second case at the time the first was initiated. See, *e. g.*, *Diaz* v. *United States*, 223 U. S. 442, 448–449 (1912).

may in his own discretion choose to use a defendant's venue rights to defeat the double jeopardy safeguard—lacks any principled foundation. For whether a defendant is tried successively for the same acts in the same judicial district or in separate districts, "[r]epetitive harassment in such a manner goes to the heart of the Fifth Amendment protection." *Abbate* v. *United States,* 359 U. S., at 200 (separate opinion of BRENNAN, J.). Whether they occur in one district or in several districts, repetitious prosecutions for the same acts enable the Government to "wear the accused out by a multitude of cases with accumulated trials." *Palko* v. *Connecticut,* 302 U. S. 319, 328 (1937). Both sorts of prosecutions enable the Government "with all its resources and power . . . to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . . ." *Green* v. *United States,* 355 U. S. 184, 187 (1957). Both should be subject to equal condemnation under the Double Jeopardy Clause.

It might be argued that the Southern District of Texas and the Northern District of Texas are separate judicial districts, and that the Double Jeopardy Clause should not extend to require coordination among federal prosecutors acting independently in separate districts. This objection, grounded on notions of bureaucratic autonomy, is thoroughly unpersuasive. The federal districts are not separate sovereign entities, but merely adjuncts of one federal sovereign. We repeatedly have held that a sovereign government may not structure its judicial and prosecutorial systems so as otherwise to defeat the safeguard against double jeopardy. See, *e. g., Robinson* v. *Neil,* 409 U. S. 505 (1973) (rejecting "dual sovereignty" doctrine with respect to separate state and municipal prosecutions); *Waller* v. *Florida,* 397 U. S. 387 (1970) (same); *Grafton* v. *United States,* 206 U. S. 333 (1907) (same with respect to separate federal and territorial prosecutions). Similarly, where different prosecutions grow out of the same criminal act and would therefore otherwise be subject to the Double Jeopardy Clause, a sovereign should not be able to regulate the *timing* of those prosecutions in different districts so as to defeat a defendant's right to seek a single consolidated trial.

Such a rule would not impose undue hardship on federal prosecutors. It would merely require that the Government coordinate its prosecutions of individuals in different districts in such

a way that the individuals were not forced to travel from district to district defending against "[r]epetitive harassment," *Abbate* v. *United States, supra,* at 200 (separate opinion of BRENNAN, J.), for the same criminal acts. Whether it results from an intent to harass, simple caprice, or a breakdown in communications among federal prosecutors, the Government's failure to coordinate its caseload cannot be allowed to undermine a defendant's ability to avoid double jeopardy.

Accordingly, this case presents the question whether we should hold that where multiple charges would otherwise be required to be brought in a single proceeding but for problems of venue among the judicial districts of one sovereign government, the Double Jeopardy Clause nevertheless requires the sovereign to bring all such charges within a reasonable time of each other.[9] In this way, the defendant would be able to seek to transfer the proceedings against him and to consolidate all charges for one trial, thereby vindicating his right under the Double Jeopardy Clause to be secure from successive prosecutions for the same criminal conduct.[10]

---

[9] It is of course difficult for the Government to coordinate the bringing of charges in different districts with chronometric precision. Delays might result, for example, from backlog, from the differing schedules of grand juries in separate districts, and so forth. Even after two prosecutions are brought, further delays might sometimes be encountered in transferring and consolidating the cases for trial. Some room for reasonable flexibility should therefore be accorded the Government, and in instances of such reasonable delay a defendant might have to postpone his exercise of speedy-trial rights to accommodate the joinder of all offenses against him in a single proceeding. Requiring such accommodation is reasonable. Under the federal Speedy Trial Act, for example, courts may exclude in computing the time within which a trial must commence any delay resulting from, *inter alia,* "any proceeding relating to the transfer of a case . . . from another district under the Federal Rules of Criminal Procedure" and any "continuance granted by any judge . . . at the request of the defendant or his counsel." 18 U. S. C. §§ 3161(h)(1)(G), 3161(h)(8)(A). In all instances the inquiry must be whether the delay is reasonable and whether the Government has so coordinated its interdistrict prosecutions as to permit the defendant meaningfully to exercise his right to seek a transfer and joinder of charges in one proceeding.

[10] Federal Rule of Criminal Procedure 21(b) gives the district court discretion whether to permit a transfer to another district. Where a defendant seeks a transfer to protect against double jeopardy, his interest in securing a transfer would approach its zenith and the district court's discretion accordingly would be narrowly circumscribed. There is no need here to decide

In the instant case, Ira Borchardt was prosecuted in one District for conspiracy to import marihuana, largely on the basis of his efforts to smuggle money out of the country to facilitate the purchase and importation of the substance. Immediately thereafter he was prosecuted again, this time for currency violations. Once again, Borchardt's conviction was grounded on his efforts to smuggle currency out of the country in furtherance of the conspiracy. But for asserted problems of venue, the Government should have been required to bring these charges in a single indictment. See Part II, *supra*. For whatever reason, the Government instead timed its interdistrict prosecutions of Borchardt so as to deny him his right to seek a consolidation of these charges under Rule 21(b), thereby stripping him of the only effective means to invoke his rights under the Double Jeopardy Clause and to seek to have all charges arising out of the currency smuggling resolved in a single trial.

Accordingly, I would grant the petition for certiorari.

---

whether the "interests of justice" could ever lead a court in the reasonable exercise of its discretion to deny a transfer in such circumstances. Even where there is room for discretion, however, it is important in the context of the Double Jeopardy Clause that "the decision on whether charges are to be tried jointly or separately . . . rest with the judge rather than the prosecutor." *Ashe* v. *Swenson*, 397 U. S., at 455, n. 11 (BRENNAN, J., concurring) (*re* discretionary exercise of Rule 14 authority).