**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Leonardo OLIVARES–MARTINEZ,
Defendant-Appellant.**

No. 85–1010
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1985.

Nancy B. Barohn, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Sidney Powell, Daniel E. Maeso, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Appellant, Leonardo Olivares-Martinez appeals from the district court's order denying his Motion to Correct Illegal Sentence. The district court had reinstated Olivares-Martinez' previously probated sentence consecutively, rather than concurrently, to the sentence imposed on the conviction that caused his probation to be revoked. On appeal Olivares-Martinez asserts that in doing so the district court exceeded its sentencing authority under 18 U.S.C. § 3653; "increased" his sentence in violation of the Fifth Amendment prohibition against double jeopardy; and violated the *ex post facto* clause of the United States Constitution. Because we find these assertions meritless, we affirm.

## I. *Procedural History*

On April 25, 1983, Olivares-Martinez pleaded guilty in the United States District Court for the Western District of Texas to one count of attempting the transport of an illegal alien in the United States contrary to 8 U.S.C. § 1324(a)(2). He was sentenced to a five year prison term. The district court only required, however, that he be confined for a period of six months; execution of the remaining sentence was suspended and Olivares-Martinez was placed on five years probation.

On March 23, 1984, after completing the six month prison term for his Texas conviction, Olivares-Martinez was arrested in Arkansas, again for a violation of attempting the transport of an illegal alien. On May 30, 1984, following a plea of guilty to that charge in the United States District Court for the Western District of Arkansas, Olivares-Martinez was sentenced to a three year prison term. Thereafter, in response to Olivares-Martinez' Arkansas conviction, the district court in Texas revoked his probation and reinstated forty-two months of the fifty-four month sentence remaining on his Texas conviction. In its resentencing order, the district court expressly directed that Olivares-Martinez' reinstated sentence run *consecutively* to the intervening three year sentence imposed on his Arkansas conviction.

On October 22, 1984, Olivares-Martinez filed a motion to "Correct Illegal Sentence" pursuant to Fed.R.Crim.P. 35(a) which the

district court denied. Olivares-Martinez then filed a timely notice of appeal.

## II. *Sentencing Authority*

■ We are called upon to determine whether the district court by reinstating Olivares-Martinez' sentence consecutive to the three year sentence of the district court in Arkansas exceeded its authority granted by 18 U.S.C. § 3653.[1] Pursuant to that statute, the extent of a court's authority to sentence a defendant after revoking his probation depends upon the nature of the defendant's original sentence. If the court initially suspended imposition of the sentence, upon revoking probation it may subsequently impose any sentence which might originally have been imposed. *Id.* If, however, the court suspended execution of the sentence, its subsequent authority is limited to either reinstating the original sentence, or to imposing any lesser sentence. *See Roberts v. United States,* 320 U.S. 264, 64 S.Ct. 113, 88 L.Ed. 41 (1943); *United States v. McDonald,* 611 F.2d 1291, 1294 (9th Cir.1980); *United States v. Nagelberg,* 413 F.2d 708, 710 (2nd Cir.1969), *cert. denied,* 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970).

■ In this case, the district court originally imposed a five year sentence. Olivares-Martinez was then required to serve a six month prison term with execution of the remaining 54 months suspended. Upon subsequently revoking Olivares-Martinez' probation, the court reinstated only 46 months although section 3653 would have permitted reinstatement of the entire remaining period. Thus, because Olivares-Martinez' reinstated sentence was less than his original sentence, the district court's resentencing decision was clearly consistent with its authority under section 3653.

■ Olivares-Martinez asserts that the district court improperly increased his original sentence by reinstating it consecutive to the intervening sentence. His argument, however, does not sufficiently articulate how the reinstated sentence increased the punishment for his original criminal conduct. Although the precise issue has not been addressed in this Circuit, there is little question that a district court may reinstate "a sentence upon revocation of a probation so that it is 'served consecutive to a federal sentence for an intervening crime.'" *United States v. Wingender,* 711 F.2d 869, 870 n. 2 (9th Cir.1983) (quoting *United States v. Lustig,* 555 F.2d 751, 753 (9th Cir.1977) (per curiam), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978)); *United States v. Tacoma,* 199 F.2d 482, 483 (2d Cir.1952); *cf. United States v. Newton,* 698 F.2d 770, 772 (5th Cir.1983). Further, we note that consecutive sentencing is an appropriate mechanism for imposing distinct punishment for separate criminal acts, *Lustig,* 555 F.2d at 753, and that a defendant has no right to have concurrent sentences imposed for two totally unrelated offenses. *See Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981); *United States v. Dovalina,* 711 F.2d 737, 739 (5th Cir.1983); *United States v. Moreno,* 630 F.2d 338, 339 (5th Cir.1980).

■ To support his assertion that imposition of the reinstated sentence consecutive to the intervening sentence exceeded the district court's authority, Olivares-Martinez cites *Ralston v. Robinson,* 454 U.S. 201, 216 n. 9, 102 S.Ct. 233, 243 n. 9, 70 L.Ed.2d 345 (1981), for the proposition that "a concurrent sentence of a given length will result in a shorter ultimate sentence than a consecutive sentence of that [same] length." This statement on its face, however, is irrelevant. Since Olivares-Martinez' original sentence was never a concurrent sentence, he clearly sustained no increased incarceration under his original conviction when it was subsequently reinstated consecutive to the sentence on the

---

1. Title 18 U.S.C. § 3653 dealing with revocation of a defendant's probation, in pertinent part, provides that

    the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed.

intervening conviction. Moreover, a more accurate characterization of the sentencing discussion in *Ralston* reveals language actually supporting the reinstated sentence in this case.

> The dissenting opinion asserts that our interpretation of congressional intent is inconsistent with the common-law rule that "a punishment already partly suffered be not increased." That common-law rule simply does not apply when Congress has provided a court with the power to modify a sentence in light of changed circumstances. For example, a court may impose a suspended sentence and probation, under the general probation statute or under the YCA. If the defendant violates the terms of his probation, the court may "increase" the punishment by requiring him to serve the initial sentence. Here, the statute permits a judge to modify the conditions of a YCA sentence if the offender is convicted of a subsequent adult crime and if further YCA treatment would be futile. In each case, the sentencing statute invests the court with the power to modify conditions in light of the subsequent offense.

*Ralston,* 454 U.S. at 218 n. 10, 102 S.Ct. at 244 n. 10 (citations omitted).

> We have no doubt that the second sentencing judge could have modified respondent's YCA treatment terms by imposing a concurrent sentence. The judge did not, however, avail himself of that option.
>
> It would be anomalous to permit a concurrent sentence to modify the terms of the remainder of a YCA sentence but not to permit a consecutive term to have that effect, since a concurrent sentence is traditionally imposed as a *less* severe sanction than a consecutive sentence. Moreover, a consecutive sentence may be the preferable form of sentence for an offense committed while serving a sentence for a prior offense.

*Id.* at 216 n. 9, 102 S.Ct. at 243 n. 9 (citations omitted) (emphasis in original).

Finally, the two remaining cases relied upon by Olivares-Martinez, *United States v. Henry,* 709 F.2d 298 (5th Cir.1983) (en banc), and *United States v. Williams,* 651 F.2d 644 (9th Cir.1981), similarly fail to support his position. Unlike the resentencing pursuant to a probation revocation at issue here, the resentencing addressed in both *Henry* and *Williams* arose solely because the defendants had successfully appealed some aspect of their original convictions. Thus, their sentence modification was not attributed to intervening criminal conduct as here; rather, it resulted from the defendants' exercise of their right to appeal. Also, unlike this case, the original sentences were initially imposed as concurrent to other sentences and thereafter modified to run consecutively. The defendants therefore sustained increased incarceration under their original conviction when the sentence initially imposed was subsequently reinstated. Both *Henry* and *Williams* are distinguishable.

The analysis urged by Olivares-Martinez in this case arose in both *Williams* and *Henry* in the due process context of *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The necessary predicate for analysis under *Pearce,* however, is an increased penalty that results from a defendant's successful challenge to his conviction or sentence. *United States v. Henry,* 709 F.2d at 315. Such a predicate does not exist here. Moreover, *Pearce* does not preclude an increased sentence if it is sufficiently based upon the defendant's conduct after his original sentencing. *Pearce,* 395 U.S. at 723–26, 89 S.Ct. at 2079–81. Consequently, because Olivares-Martinez' increased incarceration resulted from his subsequent illegal actions and intervening conviction, the district court acted well within its broad discretion and well within the confines of section 3653 in reinstating most of the remaining time on the original sentence consecutive to the sentence imposed on the intervening conviction. *See United States v. Compton,* 704 F.2d 739, 742 (5th Cir.1983); *United States v. Wingender,* 711 F.2d 869, 870 n. 2 (9th Cir.1983).

## III. *Double Jeopardy*

■ Olivares-Martinez argues that the consecutive portion of his reinstated sentence violates the double jeopardy prohibition against multiple punishments for the same offenses. As we have noted, however, this case does not involve multiple punishment for a single offense. Olivares-Martinez was convicted on two different occasions for two separate offenses. The second conviction resulted in his probation being revoked on the first conviction and his increased incarceration resulted from the sentence imposed on his intervening conviction. As we have held, consecutive sentences do not violate the double jeopardy clause when imposed for separate criminal offenses. *See United States v. Borchardt*, 698 F.2d 697, 702 (5th Cir.1983).

■ In urging that double jeopardy applies, Olivares-Martinez relies upon his earlier assertion that the reinstated sentence constitutes an increased sentence and argues that "any increase in a sentence after the defendant has commenced to serve his punishment is a violation of the defendant's rights not to be subject to double jeopardy." (citing *Henry*, 709 F.2d at 317). Olivares-Martinez' argument hardly seems logical in this case, however, since his own misconduct triggered the conditions permitting the modification or "increase" of his original sentence. *See Ralston v. Robinson*, 454 U.S. at 220 n. 14, 102 S.Ct. at 245 n. 14. Thus, because there is no double jeopardy protection against the revocation of probation and imposition of imprisonment, *United States v. DiFrancesco*, 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980); *United States v. Whitney*, 649 F.2d 296, 298 (5th Cir.1981), and because a defendant whose probation has been revoked has no right to have his original sentence reinstated concurrently to the sentence imposed on an intervening conviction, *United States v. Wingender*, 711 F.2d at 870 n. 2; *United States v. Tacoma*, 199 F.2d at 483; *cf. also United States v. Newton*, 698 F.2d at 771, Olivares-Martinez' double jeopardy argument must be rejected. *Borchardt*, 698 F.2d at 702.

## IV. *Ex Post Facto*

Olivares-Martinez asserts that by running his reinstated Texas sentence consecutive to the sentence imposed by the district court in Arkansas, his parole eligibility on the Texas sentence has been delayed by a period of eight months. He then argues that the district court's action constitutes an "unforeseeable judicial enlargement of a criminal statute" which, applied retroactively, is violative of the ex post facto clause of the Constitution (citing *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)). This argument is without merit.

■ It is well established that the ex post facto clause applies only to legislative acts. It does not apply to judicial decisions as in this action. *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). Olivares-Martinez inaccurately characterizes *Bouie*, as holding that the ex post facto clause precludes an unforeseeable judicial enlargement of a criminal statute. In fact, the *Bouie* Court analogized an unforeseeable judicial enlargement of a criminal statute to an ex post facto *law*. *See Bouie*, 378 U.S. at 353–54, 84 S.Ct. at 1702–03. *Bouie* did not involve legislative action nor did it involve an ex post facto analysis; rather it was decided on due process grounds. Thus, unforeseeable judicial enlargements of criminal statutes, applied retroactively, have been struck down only as violative of due process. *Id.; see Marks v. United States*, 430 U.S. at 191, 97 S.Ct. at 992.

The other authority relied on by Olivares-Martinez, *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), and *United States Ex Rel. Graham v. United States Parole Commission*, 629 F.2d 1040 (5th Cir.1980), *appeal after remand*, 732 F.2d 849 (11th Cir.1984), is similarly inapposite. Those cases involved legislative action, not a judicial decision as in this case. Thus the ex post facto clause is inapplicable here.

██ Even if we construed Olivares-Martinez' ex post facto argument as a due process argument, we would still find it lacking in merit. In reinstating Olivares-Martinez' original sentence, the district court clearly acted within its authority under section 3653. Moreover, Olivares-Martinez' delayed parole eligibility cannot logically be attributed to an unforeseeable judicial enlargement of section 3653. Rather, his own misconduct permitted the sentence modification; thus, the possibility for his increased incarceration was a foreseeable result of his intervening conviction. Olivares-Martinez' reinstated conviction violates neither the ex post facto clause nor the due process clause.

For the reasons set forth above, the district court's order denying the Motion to Correct Illegal Sentence is AFFIRMED.