**Charles Mitchell RICHARDSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–87–00101–CR, 01–87–00102–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 19, 1988.

J. Brent Liedtke, Humble, Allen Isbell, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, Carol Cameron, Asst. Dist. Atty., Harris County, for appellee.

Before WARREN, DUGGAN and LEVY, JJ.

## OPINION

WARREN, Justice.

Appellant was convicted by a jury of possession of cocaine, weighing more than 28 grams and less than 400 grams, in cause number 439,656, and of possession of marihuana, weighing more than 50 pounds and less than 200 pounds, in cause number 439,-657. The court found two felony enhancement paragraphs to be true, and sentenced appellant to confinement for life.

In eight points of error, appellant claims: that the evidence was insufficient to support the conviction for possession of marihuana; that the court erroneously refused to give requested limiting charges and instructions to the jury; that the search warrant was illegal because it was based on a probable cause affidavit containing false statements; and that the court should have required the State to name the informant who supplied information supporting the search warrant.

We will consider only the points of error challenging the court's refusal to instruct the jury regarding its use of certain impeachment evidence, and the sufficiency point of error. In our opinion, discussion of the other points is unnecessary to the proper disposition of the appeal.

In his first point of error, the appellant claims that the evidence was insufficient, in cause number 439,657, to affirmatively link him to the marihuana discovered during the search of the residence, which was leased by another person. Appellant denied that he lived at the house where the contraband was found, and there was evidence that he received mail at another address. He points out that he did not have sole access to the residence, had no marihuana on his person when arrested, was not in physical proximity to the marihuana, had no marihuana in his van, which was parked outside, and was not under the influence of any drug when arrested. He specifically denied Officer Dumas' testimony that his birth certificate was hanging on the wall in one bedroom, that he turned off the stereo in the house or locked the door with his key after his arrest, and that the officer got a pair of boots out of the house for him to wear. He argues that the fact that he may have had access to the house and may have known about the marihuana was not enough to link him to the contraband.

In reviewing the sufficiency of the evidence to support a conviction, we view the evidence in the light favorable to the verdict. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). The standard is the same for direct and circumstantial evidence cases. *Carlsen v. State*, 654 S.W.2d 444, 449 (Tex. Crim.App.1983) (op. on reh'g). If a conviction is based on circumstantial evidence, the evidence must exclude every other reasonable hypothesis except that of the defendant's guilt. *Johnson v. State*, 673 S.W.2d 190, 195 (Tex.Crim.App.1984).

The offense of possession of a controlled substance requires proof that the defendant knew that the substance was

a controlled substance and that he exercised care, control, and management over it. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App.1981). The State is not required to prove that the defendant had exclusive possession of the controlled substance. *Id.* When the accused is not in exclusive possession of the place where the contraband is found, additional independent facts and circumstances must be shown that affirmatively link the accused to the contraband. *Id.* at 329. Possible facts that can provide the affirmative link showing knowledge and control include: the marihuana was in open or plain view; the place where the contraband was found was enclosed; the contraband was conveniently accessible to the accused; or the accused was the owner of the place where the contraband was found. *Deshong*, 625 S.W.2d at 329 (and cases cited therein).

■ The record reflects that Officer Dumas of the Pasadena Police Department received information from an informant that there was a "biker's dope house" at 4130 Juliet. He investigated the information, conducted surveillance at the house, and confirmed the address, the description of the house, and the identity of one of the house's occupants, Harold Lee Kelly, from utility and arrest records. Officer Dumas also testified that he saw the appellant in the yard at the house. Based on a search warrant, police raided the house. When officers forced their way through the barricaded back door into the house and identified themselves as police officers, the appellant and Ricky Capps, a co-defendant, tried to flee through the front door. They were caught and arrested.

There was evidence that the appellant's framed birth certificate was hanging on the wall in the southeast bedroom of the house. That room contained a water bed, two dressers, and a stereo system. It also contained about 186 grams of cocaine and over 56 pounds of marihuana in trash bags under the bed and in a duffle bag in the closet. Police recovered additional cocaine and another 97 pounds of marihuana in the residence and garage. A baggie with 1.15 grams of cocaine was found in appellant's pants pocket.

There was testimony that before being taken to the police station, appellant asked to go into the bedroom to turn off the stereo and to find an expensive ring that he had bought for his mother. There was testimony that the house was finally locked with the appellant's key. Much of the marihuana was contained in garbage bags and a duffle bag in the southeast bedroom. One witness testified that she had previously bought cocaine from the appellant at the house and that he had retrieved it from a duffle bag in the closet of the southeast bedroom. The witness also saw marihuana in the duffle bag. Officer Dumas testified that he overheard the appellant ask Ricky Capps at the police station, "Who burned us?" There was also evidence that telephone service was to be connected at the Juliet house for a tenant named "Charles Richards."

Viewing the facts in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that the appellant possessed the marihuana. It is not our role to judge the credibility of the evidence, and we may not substitute our own evaluation of the facts for that of the factfinder. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim.App.), *cert. denied*, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). There was evidence linking the appellant to the bedroom where much of the marihuana was found, and evidence that the large amounts were accessible in the room. Although the marihuana was not found in plain view, there was testimony that appellant had previously retrieved material from the duffle bag in the closet where marihuana was stored. Appellant's first point of error is overruled.

In his fourth point of error, the appellant contends that the court erred in not submitting his requested instruction on limiting the jury's use of evidence used to impeach a witness.

One of appellant's witnesses was Ricky Capps, who was arrested with the appellant, but himself pleaded guilty. Capps

testified for the appellant that, to his knowledge, appellant did not possess cocaine or marihuana or deal in drugs. Capps also denied the truth of Officer Dumas' testimony that appellant asked Capps, "Ricky, who was it that burned us?" After that testimony favorable to the appellant, the prosecutor impeached Capps' trial testimony with Capps' prior statement in his "plea papers" that "I committed this offense along with Harold Kelly and Charles Richardson." Appellant requested an instruction to the jury that impeachment evidence was not to be considered as tending to establish the alleged guilt of the defendant, but rather could only be considered to judge the witness' credibility and the weight to be given his testimony. The requested charge was correct in its form.

■■■ A limiting instruction is not required where evidence is admissible on the main issues of the case. *Porter v. State,* 709 S.W.2d 213 (Tex.Crim.App.1986); *McWherter v. State,* 607 S.W.2d 531, 535 (Tex.Crim.App.1980). But evidence of a previous inconsistent statement used to impeach a witness' credibility cannot be used as primary evidence to prove guilt. *Lawhon v. State,* 284 S.W.2d 730 (Tex.Crim.App.1955); *see Carroll v. State,* 143 Tex.Crim.R. 269, 158 S.W.2d 532 (Tex.Crim.App.1942). If evidence is admitted for a specific purpose, such as impeachment, the defendant is entitled to an instruction properly limiting the jury's consideration of that evidence to that purpose. *Dowlen v. State,* 144 Tex.Crim.R. 177, 161 S.W.2d 1067 (Tex.Crim.App.1942); *see Crawford v. State,* 696 S.W.2d 903 (Tex.Crim.App.1985).

■■■ Here, the evidence was admitted to impeach the witness' credibility, and not as primary evidence to prove the appellant's guilt. Although the witness testified for the appellant rather than the State, we find the rationale underlying the cases requiring a limiting instruction in such cases to be equally applicable here. Here, the witness' prior statement was especially incriminating to appellant because it was a statement that appellant committed the offenses.

Although the State was entitled to impeach the witness' credibility by showing that he had previously claimed that he had committed the offense along with the appellant, that prior statement should not have been considered as primary evidence in the trial on appellant's guilt. The jury should have been instructed accordingly. *Dowlen v. State,* 161 S.W.2d at 1069 (where impeaching evidence can be used for purpose other than judging credibility, charge is required); *see Fawcett v. State,* 152 Tex.Crim.R. 292, 213 S.W.2d 830, 832 (Tex.Crim.App.1948) (evidence used to impeach defense witness that could be used for other prejudicial purpose, requires instruction); *United States v. Borchardt,* 698 F.2d 697, 701 (5th Cir.1983), *cert. denied,* 469 U.S. 937, 105 S.Ct. 341, 83 L.Ed.2d 276 (1984) (witness-accomplice's guilty plea may be used at trial to impeach credibility, but strong cautionary instruction to be given to jury to avoid inference of accused's guilt from this evidence).

We next address whether the failure to give this limiting instruction was harmful. *Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1984). Because the error was properly objected to at trial, any harm, regardless of the degree, is sufficient to require reversal. *Gibson v. State,* 726 S.W.2d 129, 133 (Tex.Crim.App.1987); *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim.App.1986).

Here, the testimony concerning appellant's link to the "dope house" and his actual possession was sharply contested, and the appellant and his witnesses contradicted the State's witnesses' account of events. Two previous trials had each resulted in a hung jury. Given the state of the evidence and the sharply disputed issues, a statement by a person who admitted his own guilt, and who was arrested with the appellant, that he committed the offense along with the appellant, is clearly prejudicial. Such potentially inflammatory evidence requires an instruction limiting its consideration by the jury to its properly admitted purpose. That is, the jury should have been charged that it could consider this statement only to decide whether the witness' contrary statement at trial made

his credibility less trustworthy, and not to show that the prior statement was proof of the appellant's guilt. We cannot say that the failure to give such a limiting instruction was harmless. The fourth point of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.