OPINION
 

 HEDGES, Justice.
 

 A jury convicted appellant, Mauricio Elias Castiblanco-Gomez, of possession with intent to deliver a controlled substance, cocaine, weighing at least 400 grams and assessed punishment at 45-years confinement and a $100,000 fine. The State used the conviction as the basis to revoke appellant’s defen’ed adjudication probation for a previous unrelated conviction. Appellant attacks both the possession conviction and the revocation of probation. We affirm.
 

 Facts
 

 In March and April 1993, Houston police officers conducted surveillance of an apartment based on information from a confidential informant. Appellant’s co-defendant lived in the targeted apartment. On several occasions, they observed appellant enter the apartment carrying a package and leave soon thereafter without it. On April 22, 1993, appellant arrived at the apartment, took a paper bag out of the trunk of his car, and carried it into the apartment.
 

 Within minutes, the co-defendant left the apartment carrying a cereal box officers sus
 
 *566
 
 pected had been in the paper bag appellant had taken into the apartment. The officers arrested the co-defendant and seized the cereal box, which contained what the officers believed to be a kilogram of cocaine. Appellant’s left index fingerprint was on the package of cocaine.
 

 Legal Effect of Adulterants and/or Dilu-tants on Punishment
 

 In point of error one, appellant contends that the evidence in cause number 01-93-01075-CR is legally insufficient to support a finding that he possessed with intent to deliver cocaine weighing at least 400 grams. Appellant claims that the State failed to prove the affect of the adulterants and/or dilutants on the chemical activity of the controlled substance, as required by
 
 Cawthon v. State,
 
 849 S.W.2d 346 (Tex.Crim.App.1992).
 

 Ms. Edna Black, a chemist for the city of Houston police crime laboratory, testified about the composition of the seized evidence. She stated that she performed gas chromatography tests to identify the substance and its purity level. The tests established that the substance was 74.6 percent pure cocaine. The total weight was one kilogram, of which approximately 746 grams were pure cocaine. Appellant did not cross-examine Ms. Black or object to her testimony.
 

 In
 
 Cawthon,
 
 the defendant was charged with possession with intent to deliver at
 
 least 28 grams but not more than 400 grams
 
 of amphetamine.
 
 Cawthon,
 
 849 S.W.2d at 347. On appeal, the defendant contended that the evidence was insufficient to show that the controlled substance weighed at least 28 grams. The chemist testified that the total weight of the substance was 128.76 grams. The substance was 20 percent amphetamine, which equates to 25.752 grams,
 
 [1]
 
 and the remainder was adulterants and dilutants.
 
 Id. Cawthon
 
 held that
 
 when adulterants or dilu-tants constitutes apart of the weight utilized to increase punishment,
 
 the State must prove: 1) the identity of the named illegal substance; 2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity; 3) that the remainder (adulterants and/or dilutants) was added to increase the bulk or quantity of the final product; and 4) the weight of the illegal substance, including any adulterants and/or dilutants.
 
 Id.
 
 at 344-49. In that case, the State relied on the adulterants and/or dilu-tants to meet the 28 gram weight standard.
 

 Cawthon
 
 does not control this case for two reasons. First, the State did not depend on the weight of the adulterants/dilutants to assess a greater punishment when charging appellant with the offense. The indictment alleges
 
 over 4,00 grams.
 
 The chemist’s testimony that there were 746 grams of pure cocaine is undisputed. Unlike the 25.752 grams of amphetamine in
 
 Cawthon,
 
 which fell below the minimum weight alleged, the 746 grams of cocaine alone is sufficient to sustain appellant’s conviction. Second, unlike
 
 Cawthon,
 
 appellant failed to challenge at trial the conclusions drawn by the State’s expert witness.
 
 See Short v. State,
 
 874 S.W.2d 666, 668 (Tex.Crim.App.1994).
 

 We decline appellant’s invitation to extend the requirements of
 
 Cawthon
 
 to all cases in which the State alleges the presence of adulterants and/or dilutants notwithstanding an adequate quantity of the pure controlled substance.
 

 We overrule point of error one.
 

 Probation Revocation
 

 In point of error two, appellant argues that the trial court abused its discretion in revoking his probation. In cause number 01-93-01076-CR, appellant was charged with possession of cocaine weighing less than 28 grams. He pleaded guilty without a recommendation from the prosecution. The trial court granted deferred adjudication, placed appellant on probation for 10 years, and assessed a fine of $1,000. Appellant signed a waiver of constitutional rights that stated he would not be permitted to appeal a determination by the trial court that he had violated a condition of probation. The conditions of appellant’s probation included a requirement that he commit no offense against the laws of Texas or any other state or of the United States.
 

 
 *567
 
 Adult probation and applications to revoke probation are governed by Tex.Code CRIM.P.Ann. art. 42.12 (Vernon Supp.1994). Section 5(b) of this statute specifically provides that there shall be no appeal taken from the trial court’s determination to adjudicate. Tex.Code Ceim.P.Ann. art. 42.-12(5)(b) (Vernon Supp.1994). This Court is required to dismiss a direct appeal of a trial court’s decision to adjudicate.
 
 Phynes v. State,
 
 828 S.W.2d 1 (Tex.Crim.App.1992).
 

 We overrule point of error two.
 

 Inadmissible Testimony
 

 In point of error three, appellant argues that at the guilt-innocence phase in cause number 01-93-01075-CR, the trial court improperly allowed the State to present evidence of the street value of cocaine, the method of selling cocaine, the number of times cocaine is cut before it is sold on the streets, and the definition of crack cocaine. Appellant contends that not only was the evidence not relevant, the danger of unfair prejudice greatly outweighed its probative value under Tex.R.CRIM.Eved. 403. He complains of the following testimony elicited by the State:
 

 Q: Have you had many occasions, Officer Whitworth, to talk to drug dealers about the value of a kilo of cocaine?
 

 A. Sure.
 

 Q. Have you done that recently?
 

 A. Yes, ma’am.
 

 Q. How recently?
 

 A. Today.
 

 Q. Have you spoken with other narcotics officers about the value of a kilo of cocaine?'
 

 A. Yes, ma’am.
 

 Q. What is the typical value of a kilo of cocaine if it is bought in the kilo form?
 

 [Defense Counsel]: Object to hearsay, judge.
 

 [The Court]: Overruled.
 

 A. Right now it’s about twenty-one thousand dollars a key.
 

 Q. Do you know, Officer Whitworth, in your experience as a narcotics officer, how cocaine is usually sold on the street? Is it sold by the kilo?
 

 A. You’re talking about in the user quantity on the street?
 

 Q. Yes.
 

 A. No.
 

 Q. How is it typically sold?
 

 A. In amounts by quarter gram.
 

 Q. Is that powdered cocaine that you’re referring to?
 

 A. Uh-hum.
 

 Q. How much is a quarter gram of cocaine worth on the street?
 

 A. Depends actually on supply and demand, like anything else, but anywhere from twenty-five dollars, thirty-five dollars, somewhere in that range. You did ask me the quarter gram?
 

 Q. I did. Your typical kilo of cocaine, Officer Whitworth, is it usually sold — is it usually divided up or cut and diluted before sold on the street?
 

 A. As a general rule, it’d be diluted.
 

 Q.
 
 How often is it cut or diluted before it’s sold on the street? How many times?
 

 A.
 
 It can vary greatly according to the purity of the cocaine, the original kilo, but anywhere from twice to three times on up to maybe six or seven times, dependent on the purity, dependent on the purity of the cocaine and what part of town and who is selling it on the street.
 

 Q. Let’s take, for example, cocaine that is, say, approximately seventy-five percent pure. How many times would it be cut usually before it ends up on the street?
 

 [Defense Counsel]:
 
 Object to materiality on this type of question during this phase of trial.
 

 [The Court]: Overruled.
 

 A. Ask me again. I am sorry.
 

 Q. For example, a kilo of cocaine that is roughly seventy-five percent pure, how often would it be cut before it ends up on the street?
 

 A.
 
 Dependent on who, it’s like any other business, I say anywhere from three to seven times.
 

 Q. Okay. Then if you will give me an approximate street value of a kilo of co
 
 *568
 
 caine that has been cut approximately three times.
 

 A. Right now what the value would be? The way you would figure, the easiest way to figure that is if you cut it three times, you bought one kilo and you cut it, now you have three kilos, okay? And there is a thousand grams to a kilo, so now you have, where you had a thousand grams, you have three thousand grams, and approximately if you’re selling quarter grams on the street, you sell it anywhere from right now anywhere from a hundred to a hundred fifty dollars, so if you split the difference, sold it at one hundred twenty-five dollars a gram, you now have three thousand grams, it’s over three hundred thousand dollars.
 

 Q. So that’s the street value of approximately a kilo of cocaine in powder form?
 

 A. Yes. If you buy a kilo of cocaine, if you distribute it all the way down to the person that buys this quarter gram, you could get three hundred thousand dollars out of one kilo.
 

 Q.
 
 All right Cocaine is also sold in rock form or crack form; is it?
 

 A. Yes, ma’am.
 

 Q. Tell the ladies and gentlemen of the jury briefly what crack cocaine is.
 

 [Defense Counsel]:
 
 Object to the materiality of what rock crack cocaine is.
 

 [The Court]: Overruled.
 

 A. Crack cocaine or rock cocaine is where they, I am not a chemist, but simply put, from my experience in dealing with it, it’s a purer form. You buy a gram of powdered cocaine, and what you do is you do a process that tries to take the cutting and impurities out of it and you smoke it as opposed to inhale it or ingest it, so it’s a more purer [sic] form of cocaine.
 

 Q. If you took a kilo of cocaine that is approximately seventy-five percent pure and sold it in crack cocaine form on the street, how much would that kilo of cocaine be worth street value in crack form?
 

 A. I wouldn’t put a dollar amount on it. All I could tell you is it would be worth substantially more than the three hundred thousand dollars in powdered form.
 

 Q. As much as twice as much?
 

 A. It could be worth as much as twice as much.
 

 Q. So conceivably up to six hundred thousand dollars?
 

 A. It’s conceivable.
 

 Initially, we observe that appellant waived his complaint that the probative value of the testimony was outweighed by its prejudicial effect because he makes that objection for the first time on appeal. “An objection stating one legal theory may not be used to support a different legal theory on appeal.”
 
 Camacho v. State,
 
 864 S.W.2d 524, 533 (Tex.Crim.App.1993),
 
 cert. denied,
 
 — U.S. -, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994);
 
 Nelson v. State,
 
 864 S.W.2d 496, 499 (Tex.Crim.App.1993),
 
 cert. denied,
 
 - U.S. -, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); Tex.R.App.P. 52(a).
 

 We now examine his complaint that this line of questioning was not relevant to the issue of whether he was guilty of possession with intent to deliver cocaine. Appellant’s objection that testimony about the typical value of a kilo of cocaine was hearsay was overruled by the court, and that ruling is not assigned as error on appeal. Therefore, the testimony about the cocaine’s value is unchallenged until the first “materiality” objection.
 

 Although an objection that testimony is not “material” is not contemplated by the Rules of Criminal Evidence, we believe that the objection suffices to preserve an objection about the relevancy of evidence. But because basically the same evidence about the cocaine’s value and methods of sale were previously admitted and is not attacked on appeal, the first materiality objection is waived. We are left with only the second challenge to materiality to consider.
 

 With that objection, appellant complained that the discussion of rock or crack cocaine was not relevant to an adjudication of his guilt or innocence of possession with intent to deliver cocaine in powder form. We find that the officer’s testimony about the production and value of rock cocaine was not relevant to appellant’s guilt. We now must determine whether the error was harmless.
 

 
 *569
 
 We will reverse a criminal judgment based on trial error unless we determine “beyond a reasonable doubt that the error made no contribution to the conviction or punishment.”
 
 Accord Worthington v. State,
 
 859 S.W.2d 530, 533 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd); Tex.R.App.P. 81(b)(2). We review the entire record and evaluate the evidence in a neutral and impartial light.
 
 Harris v. State,
 
 790 S.W.2d 568, 586-88 (Tex.Crim.App.1989). We examine the source, nature, and degree of the error to determine whether the error was harmful.
 
 Id.
 
 at 585.
 

 The discussion of crack cocaine had very little importance in the context of the entire trial. There was no mention of this form of cocaine during voir dire. The opening and closing statements on guilt-innocence are not part of the record on appeal. Therefore, appellant cannot establish harm in the context of those jury arguments. At the punishment stage, the State argued without objection that the value of the powdered cocaine would double to $600,000 if it were processed into crack cocaine.
 

 The source of the error was the State and its police officer-witness. The nature of the error was to inject a reference to a form of controlled substance appellant was not charged with possessing. The degree of the harm was not serious, in light of the very limited nature of the jury’s exposure to it and the fact that, with the exception of Officer "Whitworth’s testimony, all the evidence concerned
 
 cocaine,
 
 not
 
 crack cocaine.
 

 We do not believe that this reference to crack cocaine comes close to the error condemned in
 
 Contreras v. State,
 
 846 S.W.2d 48, 50 (Tex.App.—Corpus Christi 1992, pet. pending). In that case, the defendant had been charged with possession of only an ounce of cocaine. The State was allowed during the punishment stage to elicit testimony about what a drug dealer would do with that amount of cocaine and what the street value of cut cocaine would be. The officer described the chain of distribution from the importers who brought in large quantities of cocaine into the country, to the “kilo” dealers, and to the smaller dealers. He attempted to link the defendant’s ounce of cocaine to a brick or kilo by stating that it appeared to have been broken off from a larger quantity. On final summation, the State referred to the defendant as an “ounce dealer” and argued that his activities promoted general criminal activity. The Court of Criminal Appeals condemned the evidence as speculative and irrelevant, representing a reference to extraneous offenses as well as an attempt to link the defendant with drug importers and dealers.
 
 Id.
 
 at 50. In this case, the evidence relating to crack cocaine was irrelevant, but it had no importance in the context of the entire trial.
 

 We overrule point of error three.
 

 We affirm the judgment of the trial court.
 

 [1]
 

 . Twenty percent of the total weight of 128.76 grams equals 25.752 grams.