**Juan Enrique CABRALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–94–00115–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

July 3, 1996.

Rehearing Overruled Aug. 8, 1996.

---

Tom Moran, Michael Olsen, Houston, for appellant.

Carol H. Cameron, Houston, for appellee.

Before MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION

MURPHY, Chief Justice.

Appellant, Juan Enrique Cabrales, appeals a jury conviction for possession of a controlled substance with the intent to deliver. TEX. HEALTH & SAFETY CODE ANN. § 481.112(d)(3) (Vernon 1992).[1] The trial court sentenced appellant to thirty (30) years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant brings fourteen points of error, contending (1) the trial court improperly allowed testimony about the price of cocaine and the method of manufacturing "crack" cocaine; (2) the trial court erred in overrul-

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised health and safety code. *See* Acts 1993, 73rd Leg., Ch. 900, § 2.02.

Therefore, all references to the health and safety code are to the code in effect at the time the crime was committed.

ing his objections and motion for mistrial based on the prosecutor's comments concerning his post-arrest silence; (3) the evidence was legally, or alternatively, factually insufficient to sustain his conviction; and (4) the trial court improperly overruled his motion to suppress. We reverse and remand for a new trial.

On May 7, 1992, Officers Allen Ray Meeks and Michael Ellison of the Harris County Sheriff's Department, Organized Crime Unit, pulled over a white Ford Explorer for a traffic violation. Both the driver, Francisco Avila, and appellant, who was a passenger in the vehicle, gave written consents to search the Explorer. The officers subsequently discovered four, locked duffel bags, which they determined to contain seventy-eight packages of cocaine.

In his eleventh point of error, appellant contends the evidence was legally insufficient to sustain his conviction. When reviewing the sufficiency of the evidence, this Court must review all the evidence in the light most favorable to the verdict or judgment. *Garrett v. State*, 851 S.W.2d 853, 857 (Tex.Crim.App.1993); *Houston v. State*, 663 S.W.2d 455, 456 (Tex.Crim.App.1984). In doing so, we must determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Ransom v. State*, 789 S.W.2d 572, 577 (Tex.Crim.App.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3255, 111 L.Ed.2d 765 (1990). In conducting this review, we are not to re-evaluate the weight and credibility of the evidence, but act only to ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim. App.1988). Rather, the jury, as the trier of fact, is the sole judge of the credibility of the witnesses. *Soto v. State*, 864 S.W.2d 687, 691 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd) (citing *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988)). If there is evidence to establish the defendant is guilty beyond a reasonable doubt, and the trier of fact believes that evidence, we cannot reverse the judgment on insufficient evidence grounds. *Soto*, 864 S.W.2d at 691 (citing *Moreno*, 755 S.W.2d at 867).

To support a conviction for unlawful possession, the State must prove the accused (1) exercised care, control and management over the contraband; and (2) knew the matter possessed was contraband. *Washington v. State*, 902 S.W.2d 649, 652 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *Campbell v. State*, 822 S.W.2d 776, 777 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). When the accused is not in exclusive possession of the place where the contraband is found, the State must present additional independent facts and circumstances that affirmatively link the accused to the contraband. *Washington*, 902 S.W.2d at 652. The affirmative link must raise a reasonable inference that the accused knew of and controlled the contraband. *Id.* Some factors on which various courts have relied to provide this affirmative link include (1) the place where the contraband was found was enclosed; (2) the contraband was conveniently accessible to the accused; (3) the accused was the owner of the place where the contraband was found; (4) the quantity of the drugs found; (5) the accused possessed a key to the locked location of the drugs; (6) a tip by an informant that the accused was in possession of contraband; (7) the accused was in close proximity to a large quantity of contraband; and (8) drug paraphernalia was found on or in plain view of the accused. *Id.* (citing *Stokes v. State*, 853 S.W.2d 227, 239 (Tex.App.—Tyler 1993, no pet.); *Ettipio v. State*, 794 S.W.2d 871, 874 (Tex.App.—Houston [14th Dist.] 1990), *pet. dism'd, improvidently granted*, 817 S.W.2d 344 (1991); *Richardson v. State*, 751 S.W.2d 663, 665 (Tex.App.—Houston [1st Dist.] 1988), *rev'd on other grounds*, 786 S.W.2d 335 (1990), *cert. denied*, 502 U.S. 972, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991)).

In the present case, Officer James Pruitt, an experienced narcotics officer with the Organized Crimes Unit, testified that a white Ford Explorer, with two individuals who were subsequently identified as appel-

lant and Avilas, drove into the garage of a residence that he was surveying. The driver then closed the garage door. Officer Pruitt further testified that approximately fifteen to twenty minutes later, the garage door opened, the Explorer pulled out of the garage, and appellant "walked out, looked around, up and down the street, and then got into the Explorer." Officer Pruitt stated that based on his experience as a narcotics officer, appellant's conduct was consistent with the behavior of an individual carrying drugs. Moreover, the police discovered the cocaine in an enclosed place, namely the backseat and rear area of the vehicle. Appellant was also located in close proximity to an extremely large quantity of cocaine when the police arrested him. Further, although appellant informed the arresting officers that he did not know who owned the duffel bags, he directed the officers to the hidden keys which unlocked the bags. Upon thorough review of the record and in the light most favorable to the verdict, we find sufficient evidence exists whereby a rational trier of fact could have found appellant guilty beyond a reasonable doubt. Appellant's eleventh point is overruled.

In points one through four, appellant argues that during the guilt/innocence phase, the trial court improperly allowed the State to present evidence of the street value of cocaine and the method of manufacturing crack cocaine. Appellant contends that such evidence was not relevant to whether he intentionally and knowingly possessed cocaine with the intent to deliver. *See* TEX. R.CRIM.EVID. 402. Specifically, appellant complains of the following testimony of Officer James Pruitt elicited by the State:

> [PROSECUTOR]: Have you had the opportunity, to talk to, in addition to that, other Narcotics Officers concerning—uh—the current price—uh—or value of a kilo of cocaine?
>
> [OFFICER PRUITT]: Yes ma'am.
>
> [PROSECUTOR]: Have you also talked to those drug dealers about the value of a kilo of cocaine?
>
> [OFFICER PRUITT]: Yes ma'am.

> [PROSECUTOR]: How recently have you spoken to some of these drug dealers about the value of a kilo?
>
> [OFFICER PRUITT]: Last night.
>
> [PROSECUTOR]: In your experience, what is the value of one kilo of cocaine?
>
> [DEFENSE COUNSEL]: I object to that as not being relevant, Judge.
>
> [COURT]: That's overruled.
>
> [DEFENSE COUNSEL]: There's not—I further object, Judge, that there's nothing in the indictment that requires the State to prove the value of the cocaine, only the weight of cocaine.
>
> [COURT]: That's an objection that's overruled.
>
> [OFFICER PRUITT]: Okay, you're talking about wholesale or street value of the cocaine?
>
> [PROSECUTOR]: Street value.
>
> [OFFICER PRUITT]: Street value of the cocaine is going about a hundred dollars a gram right now.
>
> [PROSECUTOR]: How about for an entire kilo? What would the street value be of an entire kilo?
>
> [OFFICER PRUITT]: Uh, a hundred thousand dollars, if you cut it down and sell it by the gram.
>
> [PROSECUTOR]: I'm sorry?
>
> [OFFICER PRUITT]: You—if you just took the kilo of cocaine and just grammed it out without cutting it or anything else.
>
> [PROSECUTOR]: When you talked about "gramming it out," what is the usual dose of cocaine that's sold on the street?
>
> [OFFICER PRUITT]: Uh, normal dosing is one-quarter gram.
>
> [PROSECUTOR]: How much is that usually sold for?
>
> [OFFICER PRUITT]: Uh, a gram is going for a hundred twenty-five to—say quarter-gram would go for about 40 bucks.
>
> [DEFENSE COUNSEL]: Excuse me. This has nothing to do with the guilt or innocence of Mr. Cabrales, the how much, unless he's been caught on the street selling it by gram, unless he's been—something like that.

This has to do with whether he knowingly possessed some quantity of cocaine. How much it sells for, you know, how much it's—how it's cut up, has nothing to do—to do with this case and it's completely irrelevant.

[COURT]: What's your objection?

[DEFENSE COUNSEL]: My objection is it's not relevant.

[COURT]: Overruled.

. . . .

[PROSECUTOR]: What is the difference between powder cocaine and crack cocaine?

[OFFICER PRUITT]: Crack cocaine is the most purist form of it. It's dissolved down. and all the impurities are taken out.

[PROSECUTOR]: *How is that generally done?*

[OFFICER PRUITT]: It's usually cooked.

[DEFENSE COUNSEL]: This isn't a case involving crack cocaine, so I object to anything about crack cocaine being irrelevant.

[PROSECUTOR]: Judge, it has to do with the value of [sic] the street, Your Honor.

[DEFENSE COUNSEL]: They don't have to prove value, they have to prove weight.

[COURT]: Overruled. You may proceed.

[OFFICER PRUITT]: Repeat the question, ma'am.

[PROSECUTOR]: How is that generally done?

[OFFICER PRUITT]: You could take powder cocaine, you can cook it down with some baking soda and water over heat.

[PROSECUTOR]: Is that usually more potent—uh—

[OFFICER PRUITT]: Yes ma'am.

[PROSECUTOR]: —than powder cocaine?

[OFFICER PRUITT]: Yes ma'am.

[PROSECUTOR]: When you take a kilo of cocaine and you "crack it out," or make it into crack cocaine, *what is the value then, the street value, of that kilo of cocaine?*

[OFFICER PRUITT]: You can go—

[DEFENSE COUNSEL]: Excuse me. Could I have a running objection to this complete line of questioning?

[COURT]: You may. It will be overruled.

[DEFENSE COUNSEL]: Thank you, Judge.

[OFFICER PRUITT]: It could be as much as 200 to $250,000.

[PROSECUTOR]: What then would be the street value of a hundred and fifty kilos of cocaine?

[OFFICER PRUITT]: *Powder-form estimate, conservatively to be 15 million. If you "crack it out," 60 million.* (emphasis added).

 Generally, testimony concerning the price or value of a controlled substance is admissible. *See Kemner v. State,* 589 S.W.2d 403, 406 (Tex.Crim.App. [Panel Op.] 1979) (holding that testimony regarding the value of marijuana recovered from appellant was not reversible error); *Martin v. State,* 823 S.W.2d 726, 728 (Tex.App.—Waco 1992, pet. ref'd) (finding the value of marijuana to be admissible); *Thibeadeau v. State,* 739 S.W.2d 482, 485 (Tex.App.—Beaumont 1987), *vacated on other grounds,* 761 S.W.2d 22 (Tex.Crim. App.1988) (stating that value of cocaine is admissible evidence). Such testimony realistically conveys to the fact-finders the amount of the contraband and its effects on persons in terms that are understandable. *Kemner,* 589 S.W.2d at 406. However, the value and method of manufacturing *crack* cocaine was not relevant to appellant's guilt. *See Castiblanco-Gomez v. State,* 882 S.W.2d 564, 568 (Tex.App.—Houston [1st Dist.] 1994, no pet.). We must now determine whether the trial court's error in overruling appellant's relevancy objections was harmless.

 The function of an appellate court's harmless error analysis is to determine to what extent, if any, the error contributed to the conviction or punishment of the accused. *Harris v. State,* 790 S.W.2d 568, 585 (Tex.Crim.App.1989); *Johnson v. State,* 899 S.W.2d 250, 252 (Tex.App.—Houston [14th Dist.] 1995, no pet.). The reviewing court should not focus on the weight of the other evidence, but rather, on whether the error at issue might possibly have prejudiced

the jurors' decision-making; it should not ask whether the jury reached a correct result, but instead, whether the jurors were able to apply properly the law to the facts in order to reach a verdict. *Harris,* 790 S.W.2d at 588. If the error was of a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming it might have been, the conviction is tainted. *Id.* To determine whether the error at issue might have possibly prejudiced the jurors' decision-making process, we examine the source, nature, and degree of the error. *Id.* at 587; *Johnson,* 899 S.W.2d at 252; *Castiblanco–Gomez,* 882 S.W.2d at 569.

 In the present case, the source of the error was the State and its police officer-witness. The nature of the error was the State's effort to inject references to (1) crack cocaine a form of cocaine that appellant was not charged with possessing; and (2) the value of that form of cocaine, which is not an element used to establish appellant's guilt. Moreover, the degree of the harm was serious because the State emphasized the value of the seized cocaine if it had been converted to "crack" cocaine. During closing argument, the prosecutor stated in pertinent part:

> But you need to know that once this [cocaine] hits the street and it gets in the form where most people buy it by the gram *or crack,* its worth a lot of money. *Sometimes up to $60 million. So you tell me, is it reasonable when you've got something in your vehicle that's worth potentially $60 million, for you to take a passenger that doesn't know what's going on?* (emphasis added).

Appellant was not charged with possession of crack cocaine. The indictment charged appellant with possession of cocaine, with a street value of approximately $15 million, according to the testimony. Nevertheless, the State went beyond the indictment and introduced evidence of the much higher value of the crack cocaine—$60 million. We find the evidence relating to crack cocaine to be highly prejudicial because it was important in the context of the entire trial. *Cf. Castiblanco–Gomez,* 882 S.W.2d at 567 (finding that discussion of crack cocaine had little significance in the context of the entire trial).

Therefore, we sustain appellant's points one through four.

In points of error five through ten, appellant argues the trial court erred in overruling his objections and his motion for mistrial based on the prosecutor's improper argument addressing his post-arrest silence. Specifically, appellant complains of the following comments:

> [PROSECUTOR]: Once the cocaine is found in those bags and Deputy Meeks, Deputy Ellison tells the Defendant *you are under arrest,* does the Defendant then take the opportunity to tell them whoa, wait a second.
>
> [DEFENSE COUNSEL]: Excuse me, Your Honor. I will object strenuously to the attempt to get in a *custodial statement of asylum.* Counsel knows that's absolutely improper. She just said he was under arrest.
>
> [COURT]: Is that your objection?
>
> [DEFENSE COUNSEL]: Yes, sir.
>
> [COURT]: It's overruled.
>
> [PROSECUTOR]: You decide what's reasonable. *Is it reasonable for an innocent person who's just been told there is a bunch of cocaine in the bags to not say at that point—*
>
> [DEFENSE COUNSEL]: Excuse me, Your Honor. I will object to that again. That's improper under the rules and the law. That's a comment on an issue that Counsel knows they can't go into. And it's also a misstatement of the evidence in this case.
>
> [COURT]: The objection is overruled.
>
> [DEFENSE COUNSEL]: I would ask for a mistrial.
>
> [COURT]: Overruled.
>
> [PROSECUTOR]: When the Defendant's informed by Deputy Meeks and Deputy Ellison at the scene there is cocaine, as Mr. Olsen said, in them thar [sic] bags, *does he say to them, no, not my stuff.*
>
> [DEFENSE COUNSEL]: Your Honor, I would also—
>
> [PROSECUTOR]: Listen—
>
> [DEFENSE COUNSEL]: Excuse me, Counsel. I will also object again, as I have

before, Your Honor, to the Prosecutor talking about things that are not in evidence, talking about *custodial interrogation and custodial asylum,* all of which are objectionable.

[COURT]: In answer to your objection arguing about things not in evidence, that's sustained. As to the others, it's overruled.

[DEFENSE COUNSEL]: I would ask for [a] mistrial.

[COURT]: It's overruled. Stay in the record.

[PROSECUTOR]: Yes, Your Honor. Clearly from the testimony that you heard there is no response. The defendant has—

[DEFENSE COUNSEL]: Excuse me. For the purpose of the record I will object to that statement also for the same objections I've made before.

[COURT]: Objection overruled.

[DEFENSE COUNSEL]: And the request for mistrial.

[COURT]: Overruled.

[PROSECUTOR]: You tell me, *is it reasonable for an innocent person at that point to not tell the police, I don't know what's going on? I don't know where the stuff came from?* I'm just—

[DEFENSE COUNSEL]: Excuse me, Your Honor. Can I have a continuing objection?

[COURT]: Sure.

[DEFENSE COUNSEL]: Request so I don't have to keep standing up and wasting the Prosecutor's time and the Jury's?

[COURT]: Granted. And it's overruled.

[DEFENSE COUNSEL]: To this same argument.

[COURT]: All right. The record will reflect.

(emphasis added).

■■■■ Proper jury argument is limited to a summation of the evidence, reasonable deductions from the evidence, an answer to argument by opposing counsel, or a plea for law enforcement. *Smith v. State,* 898 S.W.2d 838, 845 (Tex.Crim.App.), *cert. denied,* ⸺ U.S. ⸺, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995). To determine whether the argument constitutes reversible error, this Court must consider, in light of the entire record, whether the argument (1) is extreme or manifestly improper; (2) violates a mandatory statute; or (3) injects new and harmful facts into evidence. *McKay v. State,* 707 S.W.2d 23, 36 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Colley v. State,* 893 S.W.2d 298, 301 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). More importantly, if the State comments on appellant's post-arrest silence during argument, such argument is manifestly improper and harm is presumed. *See Sanchez v. State,* 707 S.W.2d 575, 580 (Tex.Crim.App. 1986); *Lum v. State,* 903 S.W.2d 365, 369 (Tex.App.—Texarkana 1995, pet. ref'd); *Womack v. State,* 834 S.W.2d 545, 546 (Tex. App.—Houston [14th Dist.] 1992, no pet.).

When the prosecutor called attention to appellant's failure to exonerate himself before the arresting officers, the prosecutor clearly made a comment on appellant's post-arrest silence. The State, nonetheless, alleges that no reversible error occurred because (1) appellant failed to make a specific objection at trial; (2) the record does not support the fact that appellant remained silent; and (3) the prosecutor's argument was proper under the "invited argument" rule.

Appellant contends on appeal that the prosecutor's argument violated his right against self-incrimination under the Texas Constitution. *See* TEX. CONST. art. I, § 10. The State argues, however, that appellant waived error because he failed to specifically object at trial that the argument "violated the appellant's right against self-incrimination under the Texas Constitution." We disagree.

■■■■ The purpose of an objection is two-fold: (1) to notify the trial judge and the State of the complaint; and (2) to preserve a complaint for appellate review. *Ex parte Little,* 887 S.W.2d 62, 65 (Tex.Crim.App. 1994); *see also* TEX.R.APP.P. 52(a); *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App. 1977). The statutes fail to prescribe a specific form for stating an objection. *Little,* 887 S.W.2d at 65. "[A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants,

why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State,* 827 S.W.2d 907, 909 (Tex. Crim.App.1992); *see also House v. State,* 909 S.W.2d 214, 218 (Tex.App.—Houston [14th Dist.] 1995, no pet.) (Lee J., concurring). It is only when the nature of an appellant's complaint is unclear that we should consider his objection waived. *Little,* 887 S.W.2d at 66; *Lankston,* 827 S.W.2d at 909. Upon review of the record, we find that defense counsel's repeated objections and motion for a mistrial gave sufficient notice to the trial court that the prosecutor was improperly discussing appellant's post-arrest silence.

Moreover, we find the record supports the premise that appellant remained silent after being confronted with the cocaine by Officers Meeks and Ellison. The officers arrested appellant after they discovered the cocaine in the duffel bags. There is no indication in the record that appellant, following his arrest, made statements to either Officer Meeks or Officer Ellison concerning the discovered cocaine.

 Further, the State asserts the prosecutor's argument was a proper response to defense counsel's argument that "a person who doesn't know that cocaine is in those bags, upon being told that he's under arrest for possession of cocaine, would act shocked." (emphasis added). The invited argument rule permits prosecutorial argument outside the record in response to defense argument which goes *outside* the record. *Johnson v. State,* 611 S.W.2d 649, 650 (Tex.Crim.App. [Panel Op.] 1981). However, because Officer Ellison's testimony indicated that appellant appeared to be "shocked" when he was confronted with the cocaine, defense counsel's argument stayed within the record, and thus, the invited argument rule is inapplicable. Moreover, assuming *arguendo* that the invited argument rule applies, the prosecutor's argument discussing appellant's post-arrest silence went beyond the scope of a proper response to defense counsel's argument that appellant was "shocked." *See Johnson,* 611 S.W.2d at 650 (stating that a prosecutor may not stray beyond the scope

of the invitation). Appellant's fifth through tenth points of error are sustained.

Appellant argues in his twelfth point of error that the verdict is contrary to the great weight of the evidence. However, because of our disposition of appellant's points one through ten, we need not address the merits of this point. Appellant's twelfth point is overruled.

 Appellant contends in points thirteen and fourteen that the trial court erred in overruling his motion to suppress (1) evidence seized from the vehicle; and (2) all oral statements made by appellant and Avila. In reviewing a decision on a motion to suppress, the appellate court must view the evidence in the light most favorable to the trial court's ruling. *Reyes v. State,* 899 S.W.2d 319, 322 (Tex.App.—Houston [14th Dist.] 1995, pet. ref'd); *State v. Hamlin,* 871 S.W.2d 790, 792 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). At a suppression hearing, the trial judge is the sole judge of the witnesses' credibility, and the court's findings should not be disturbed absent a clear abuse of discretion. *Meek v. State,* 790 S.W.2d 618, 620 (Tex.Crim.App.1990); *Reyes,* 899 S.W.2d at 322.

 Appellant bases his argument on the "pretext arrest" doctrine which refers to situations where "an individual is validly stopped or arrested for one offense only because law enforcement officials desire to investigate that individual for a different offense—i.e., an offense for which they do not have valid legal grounds to stop or arrest." *Garcia v. State,* 827 S.W.2d 937, 940 (Tex.Crim.App.1992). Appellant argues that Officers Meeks and Ellison conducted a "pretext" stop of Avilas' Explorer because they lacked probable cause to initially search the Explorer for narcotics. Appellant now maintains that although pretext stops do not violate the federal constitution, such conduct violates the Texas Constitution, which places greater limits on the exercise of discretionary police power. *See Garcia,* 827 S.W.2d at 944 (finding that "pretext arrest" does not violate the Fourth Amendment of the federal constitution); *see also* TEX. CONST. art. I, § 9. We disagree.

Recently, the Criminal Court of Appeals held that an objectively valid traffic stop is not unlawful under the Texas Constitution, even though the detaining officer had some ulterior motive for making it. *Crittenden v. State*, 899 S.W.2d 668, 674 (Tex.Crim.App. 1995). In the present case, the arresting officers had an objectively valid traffic stop because they observed appellant's vehicle drive through a gas station to avoid a red light. *See* Tex.Rev.Civ.Stat.Ann. art. 6701d, § 188, *repealed by* Act of May 23, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex.Gen. Laws 1870, 1871. Accordingly, appellant's thirteenth and fourteenth points are overruled.

The judgment of the trial court is reversed and remanded for a new trial.