

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00204-CR

**GLORIA FLORES ROBLES,**

                                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                                    **Appellee**

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 08-00730-CRF-272

## MEMORANDUM OPINION

A jury convicted Gloria Flores Robles of possession of marihuana and the trial court sentenced her to five years in prison. She challenges: (1) the legal and factual sufficiency of the evidence; and (2) the denial of her motion to suppress. We affirm.

### FACTUAL BACKGROUND

Sergeant Shane Bush stopped a pick-up truck after the driver turned without properly signaling. The driver and passenger exited the truck. Bush testified that individuals normally remain in the vehicle, so these actions suggested an attempt by the

occupants to distance themselves from the vehicle or flee. Bush ordered the occupants to sit inside the truck. The passenger complied, but the driver turned, spoke to the passenger, and began "messing with something in his waistband and at the front seat." The driver suddenly fled. Officers later apprehended the driver, Evaristo Rodriguez.

As he approached the open passenger door of the truck, Bush smelled the "overwhelming" odor of raw marihuana. He found four grocery bags behind the driver's seat. The bags held two one-pound and eleven quarter-pound individually packaged Ziploc bags of marihuana. The odor suggested that the marihuana was fresh.

The passenger, Robles, told Bush that "Jose" was driving her to the store. She did not know Jose's last name, but he was a friend whom she did not know well. Robles denied owning a purse that Bush found in the truck. When a Spanish-speaking officer arrived, Robles admitted ownership of the purse. The purse contained bags, but no marihuana. Robles denied any knowledge of the marihuana. Bush testified that the marihuana could be seen through the sides and tops of the grocery bags, but could not be reached from the passenger side of the truck. No drugs, contraband, or illegal items were found on Robles's person.

Bush concluded that Robles was attempting to distance herself from Rodriguez and the truck, something individuals typically do when traffic stops involve a large amount of marihuana. Bush explained that the lack of marihuana or smoking instruments on Robles's person indicates that she is not a user. He testified that users do not typically have five pounds of marihuana in their possession.

Bush testified that dealers obtain marihuana by the pound. He explained that the thirteen packages found in the truck indicated that Robles and Rodriguez probably began with a five-pound load comprised of twelve quarter-pound packages and two one-pound packages, a quarter-pound of which had already been sold. He explained that dealers often buy five, ten, or fifteen pounds and then sell quarter-pounds, sometimes a pound, to other dealers. Based on his training and experience, Bush concluded that Robles and Rodriguez were mid-level dealers who had received a five-pound shipment, were trafficking marihuana, and were delivering to low level dealers.

Analyst Joel Budge testified that the marihuana weighed 4.62 pounds.

Lieutenant Carey White testified that "Jose Rodriguez" is an alias that Rodriguez uses. According to White, Robles had visited Rodriguez in jail on several occasions before her arrest in this case. Additionally, Robles's own jail records list "Jose Rodriguez" as a visitor and her boyfriend.

## LEGAL AND FACTUAL SUFFICIENCY

In point one, Robles contends that, under *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706 (Tex. 1997), the evidence is legally insufficient to support her conviction because the underlying data of Sergeant Bush's opinions is unreliable. In point two, Robles contends that the evidence is factually insufficient to support her conviction because, absent Bush's testimony, the remaining evidence is against the great weight and preponderance of the evidence.

## Applicable Law

A defendant commits unlawful possession of a controlled substance where he: (1) exercised control, management, or care over the substance; and (2) knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). When the defendant is not in exclusive possession or control of the place where contraband is found, the State must affirmatively link the defendant with the contraband. *See id*. at 406.

> Regardless of whether the evidence is direct or circumstantial, it must establish that the defendant's connection with the drug was more than fortuitous. This is the so-called "affirmative links" rule which protects the innocent bystander--a relative, friend, or even stranger to the actual possessor--from conviction merely because of his fortuitous proximity to someone else's drugs. Mere presence at the location where drugs are found is thus insufficient, by itself, to establish actual care, custody, or control of those drugs. However, presence or proximity, when combined with other evidence, either direct or circumstantial (*e.g.*, "links"), may well be sufficient to establish that element beyond a reasonable doubt. It is, as the court of appeals correctly noted, not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial.

*Evans v. State*, 202 S.W.3d 158, 161-62 (Tex. Crim. App. 2006) (quoting *Evans v. State*, 185 S.W.3d 30, 34 (Tex. App.—San Antonio 2005)) (footnotes omitted). The Court of Criminal Appeals has cautioned against use of the term "affirmative links" as suggesting "an independent test of legal sufficiency" and chosen instead to use only the term "'link' so that it is clear that evidence of drug possession is judged by the same standard as all other evidence." *Id*. at 162 n.9.

"[S]ome factors which may circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession'" include:

(1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id*. at 162 n.12 (quoting *Evans*, 185 S.W.3d at 36). "They are not a litmus test." *Id*.

## Analysis

Robles contends that Bush failed to provide evidence supporting his opinions that she was trafficking marihuana, dealers obtain marihuana by the pound, she and Rodriguez had received a five-pound load and sold a quarter-pound, and she and Rodriguez are mid-level dealers who probably received a five-pound shipment and were selling to other dealers. She further points to factors that do not link her to the marihuana: (1) no forensic evidence was presented; (2) she was not driving the truck; (3) the marihuana was found behind the driver's seat; (4) the driver fled, but she followed Bush's commands; (5) no cash, packaging materials, weapons, or drug paraphernalia were found; and (6) no evidence links her to the truck. Robles argues that, absent Bush's testimony, the record contains no evidence linking her to the marihuana.

Assuming, without deciding, that Bush's opinions are unreliable and insufficient, the record contains other links connecting Robles to the marihuana. First, Robles was present when the truck, being driven by her boyfriend, was stopped and searched. *See*

*Evans*, 202 S.W.3d at 162, n.12. Second, the marihuana was found in opaque grocery bags, but could be seen. *See Grant v. State*, 989 S.W.2d 428, 434-35 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Third, Bush testified that he smelled the odor of raw marihuana emanating from the open passenger door of the truck. *See Evans*, 202 S.W.3d at 162, n.12; *see also McGee v. State*, No. 07-08-00211-CR, 2009 Tex. App. LEXIS 1492, at *6-9 (Tex. App.—Amarillo Mar. 6, 2009, no pet.) (not designated for publication). Fourth, Robles was riding in the truck, an enclosed space, with the marihuana. *See Cabrales v. State*, 932 S.W.2d 653, 657 (Tex. App.—Houston [14th Dist] 1996, no pet.); *see also McGee*, 2009 Tex. App. LEXIS 1492, at *6-9. Fifth, the truck held a large quantity of marihuana. *See Cabrales*, 932 S.W.2d at 657. Finally, Robles denied knowledge of Rodriguez's last name, denied ownership of her purse, and claimed that she barely knew Rodriguez.[1] *See Evans*, 202 S.W.3d at 162, n.12; *see also McGee*, 2009 Tex. App. LEXIS 1492, at *6-9. The absence of links directly connecting Robles to the marihuana is not evidence of innocence. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

Even without Bush's testimony labeling Robles as a dealer trafficking marihuana, the jury had evidence before it by which to determine Robles's guilt. *See Gant v. State*, 116 S.W.3d 124, 132-33 Tex. App.—Tyler 2003, pet. ref'd); *see also Lewis v. State*, No. 10-

---

[1] Robles contends that the "logical force of this evidence" is mitigated by the fact that Bush spoke little Spanish, another Spanish-speaking officer was brought to the scene, and Robles had a translator at trial. She further contends that no evidence was introduced at trial to show that the purse actually belonged to her. As the sole judge of the weight and credibility of the evidence, the jury bore the burden of deciding what to believe. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *see also Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). In doing so, it could reasonably conclude that Robles made false statements, indicating a consciousness of guilt.

04-00225-CR, 2005 Tex. App. LEXIS 4260, at \*2-4 (Tex. App.—Waco June 1, 2005, no pet.) (not designated for publication); *Irons v. State*, No. 06-06-00192-CR, 2007 Tex. App. LEXIS 3538, at \*7-10 (Tex. App.—Texarkana May 10, 2007, pet. ref'd) (not designated for publication). The jury bore the burden of evaluating the weight of the evidence. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

Viewing all the evidence in the light most favorable to the verdict, the jury could reasonably conclude, beyond a reasonable doubt, that Robles committed the offense of possession of a controlled substance. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict clearly wrong or manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Because the evidence is legally and factually sufficient to support the jury's verdict, we overrule points one and two.

## MOTION TO SUPPRESS

In point three, Robles challenges the denial of her motion to suppress.

### Standard of Review

We apply a bifurcated standard of review to the denial of a motion to suppress. *See Haas v. State*, 172 S.W.3d 42, 49 (Tex. App.—Waco 2005, pet ref'd). First, we review the denial for abuse of discretion. *See Oles v. State,* 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). Second, we conduct a *de novo* review of the law as applied to the facts. *See Haas*, 172 S.W.3d at 49; *see also Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000);

*Oles*, 993 S.W.2d at 106. The court's findings receive "almost total deference" and absent specific findings, we review the evidence in the "light most favorable" to the ruling. *Haas*, 172 S.W.3d at 49; *Carmouche*, 10 S.W.3d at 327-328. The ruling will be affirmed if "reasonably supported by the record" and correct on any applicable legal theory. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Cisneros v. State*, 165 S.W.3d 853, 856 (Tex. App.—Texarkana 2005, no pet.).

## Analysis

At the suppression hearing, Bush testified that, when the outside lane of traffic suddenly stopped, he looked ahead and saw a green pick-up truck activate its right turn signal about twenty feet before the intersection. He testified that this constitutes a traffic violation because a driver must activate a turn signal one-hundred feet before turning. Bush explained that he was in the left lane two to three cars behind the truck:

> The truck was ahead of two other vehicles in the outside lane. I was in the inside lane. I could see the back of truck. I could see the other cars. I saw the car stopping. I changed lanes.
>
> When I changed lanes to the outside lane, I could look around, and at that time saw the right turn signal was activated. That was within about 20 feet of the intersection.

He explained that he has a different vantage point than the in-dash camera because the camera is facing straight ahead, but he was able to move and see the signal. He drove approximately twenty to forty feet before reaching the intersection himself.

Bush testified that when the pick-up was "within easily 100 feet of the intersection," no signal had been activated. According to Bush, the vehicles behind the truck began "dipping down" as they applied their breaks, indicating that the drivers are

"stepping on it harder than usual" or "more suddenly than they would if they were stopping just regularly." Bush opined that "the car that caused that reaction has either stopped suddenly or is making a turn unbeknownst to the other drivers around him."

When asked if he could identify the truck on the videotape, Bush responded, "I believe it's the one that is two ahead on the outside lane." Defense counsel asked, "Would it be this one right here?" Bush responded, "I think so, yes, sir." When asked to point to the truck, Bush responded, "I think it is this one right here."

Citing *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005) and *Paulea v. State*, 278 S.W.3d 861 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd), Robles contends that Bush failed to provide specific, articulable facts supporting his conclusion that a traffic violation was committed.[2]

In *Ford*, Trooper Andrew Peavy stopped Ford for following another car too closely and arrested Ford after findings drugs in the vehicle. *See Ford*, 158 S.W.3d at 490-91. At a suppression hearing, Peavy testified that he saw Ford "following a white car, following too close." *Id*. at 491. The Court of Criminal Appeals found this testimony insufficient to support reasonable suspicion:

> The evidence before the trial court indicated only that in Peavy's judgment, Ford was following another car too closely in violation of Transportation Code § 545.062(a). The State failed to elicit any testimony pertinent to what facts would allow Peavy to objectively determine Ford was violating a traffic law in support of his judgment.

*Id*. at 494.

---

[2] In her motion to suppress, Robles challenged the search of the vehicle. At the suppression hearing, without objection, she challenged the actual traffic stop.

In *Paulea*, an officer arrested Paulea for outstanding warrants after observing Paulea's unattended vehicle parked in a traffic lane. *See Paulea*, 278 S.W.3d at 862-63. A subsequent inventory of Paulea's vehicle yielded evidence of controlled substances. *Id*. at 863. At a suppression hearing, the officer testified that Paulea's "unattended vehicle stopped in a moving traffic lane of a two-way, two-lane roadway." *Id*. at 865. The Fourteenth Court held that this "meager testimony provided no evidence that any normal or reasonable movement of traffic, if any, was obstructed or otherwise impeded" in violation of section 545.363 of the Transportation Code. *Id*. Nor did the evidence support a violation of section 42.03 of the Penal Code, "especially in light of the officer's uncontroverted testimony that he could 'easily' pass appellant's car." *Id*. The "sparse evidence" failed to "provide the requisite factual support to give an officer probable cause to arrest" Paulea. *Id*. at 866.

This case involves section 545.104 of the Transportation Code, a different type of violation than the offenses addressed in *Ford* and *Paulea*. *See* TEX. TRANSP. CODE ANN. § 545.104(a)-(b) (Vernon 1999) (Failure to signal within one-hundred feet of turning).

In *Castro v. State*, 227 S.W.3d 737 (Tex. Crim. App. 2007), Castro was a passenger in a vehicle that was stopped for failure to signal a lane change, in violation of section 545.104. *See Castro*, 227 S.W.3d at 739. Officers found a bag of narcotics and arrested Castro. *Id*. Deputy Bailey, who had been investigating Castro's association with a drug lab, was called to the scene. *Id*. At a suppression hearing, Bailey testified that the vehicle was stopped for "failure to signal a lane change." *Id*. Bailey did not witness the

driver's actions. *See id*. The trial court denied the motion to suppress, but the appellate

court reversed. *Id*. at 740.

The Court of Criminal Appeals held that the appellate court misapplied *Ford*:

> The statute at issue in *Ford*, Transportation Code Section 545.062(a), lists
> factors to consider to determine whether a car is following too closely,
> including the speed of the vehicles, traffic, the conditions of the highway,
> and whether the driver could safely stop. Therefore, the statute makes the
> assessment of that violation a subjective determination. That is not the
> case here. Either a driver signals when changing lanes or he does not.
> Probable cause can be established by objective facts or subjective opinions.
> In the case of subjective opinions, we follow our holding in *Ford*, that the
> officer must give specific, articulable observations to support his opinion.
> We acknowledge the difference between a conclusory statement and
> specific, articulable facts. However, in cases involving offenses such as
> failure to signal a lane change, a court can determine whether an officer's
> determination that a driver committed a traffic violation was objectively
> reasonable without being presented with a detailed account of the officer's
> observations. We agree with *Ford* that opinions are not an effective
> substitute for specific, articulable facts in a reasonable-suspicion analysis
> when the nature of the offense requires an officer to make a subjective
> determination. Following too closely, speeding, and being intoxicated,
> can be examples of such subjective determinations. Failure to signal a
> lane change is not.

*Id*. at 742 (internal citations and footnotes omitted). "It was within the trial court's

discretion to believe or disbelieve the testimony and use it as a basis for the ruling on

the motion to suppress." *Id*. at 743. "[I]n the case of offenses requiring only an objective

determination of whether the offense was indeed committed, the court does not need to

know the subjective details of the stop from the officer's standpoint in order to find that

the stop was reasonable." *Id*.

In light of *Castro*, failure to signal more than one-hundred feet before turning is

an objective, not a subjective, determination. *See Castro*, 227 S.W.3d at 743. It was

unnecessary for Bush to provide a detailed account of his observations. Either a driver signals more than one-hundred feet before turning or does not. *Id*. The trial court evidently believed Bush's testimony that the driver of the truck signaled less than one-hundred feet before turning, in violation of the law. Because "[i]t was within the trial court's discretion to believe or disbelieve the testimony and use it as a basis for the ruling on the motion to suppress," we conclude that the trial court did not abuse its discretion by denying the motion to suppress. *Id*. We overrule point three.

We affirm the trial court's judgment.


FELIPE REYNA
Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed August 4, 2010
Do not publish
[CR25]